**FARUQI & FARUQI, LLP**
Lisa T. Omoto (State Bar No. 303830)
*lomoto@faruqilaw.com*
1901 Avenue of the Stars, Suite 1060
Los Angeles, California 90067
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

**WALSH P.L.L.C.**
Bonner C. Walsh (*pro hac vice* forthcoming)
*Bonner@walshpllc.com*
1561 Long Haul Road
Grangeville, ID 83530
Tel: (541) 359-2827
Facsimile: (866) 503-8206

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MICHELLE STERIOFF, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER, LLC,<br>    Defendants. | Case No. 2:22-cv-9230<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Michelle Sterioff ("Plaintiff"), individually and on behalf of all others similarly situated (the "Classes," as defined below), brings this Class Action Complaint against defendants Live Nation Entertainment, Inc. ("Live Nation") and Ticketmaster, LLC ("Ticketmaster") (collectively, "Defendants"), and respectfully alleges as follows.  Plaintiff bases the allegations herein on personal knowledge as to matters related to, and known to, her.  As to all other matters, Plaintiff bases her allegations on information and belief, through investigation of her counsel. Plaintiff believes substantial evidentiary support exists for the allegations below and seeks a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     Plaintiff brings this consumer protection and antitrust class action lawsuit against Defendants, based on Defendants' anticompetitive and misleading conduct with respect to their handling of the presale, sale, and resale of concert tickets to Taylor Swift's "The Eras" Tour.

2.     Based on information and belief, Defendants have effectuated an anticompetitive scheme aimed at eliminating and/or substantially minimizing all competition in markets for both primary ticketing services and, more recently, secondary ticketing services.

3.     Based on information and belief, the central components of Defendants' scheme are as follows.  First, Defendants eliminate competition in the primary ticketing services market by coercing major concert venue operators to enter into long-term exclusive contracts with Ticketmaster.  Because Ticketmaster has exclusive agreements with virtually all venues capable of accommodating large concerts, Taylor Swift and other popular musicians have no choice but to sell their tickets through Ticketmaster, and their fans have no choice but to purchase tickets through Ticketmaster's primary ticketing platform.  Second, Defendants attempt to eliminate competition in the secondary ticketing services market by utilizing technology that limits a primary (or secondary, etc.) purchaser from transferring

1  tickets, unless those tickets are resold through Ticketmaster's secondary ticketing
2  platform.  As a result of this scheme, over 70% of tickets for major concert venues
3  in the United States are sold through Ticketmaster's online platforms at monopolistic
4  prices.

5      4.    Taylor Swift, an eleven-time Grammy Award winner and one of the
6  best-selling musicians of all time, and Taylor Swift Management contracted with
7  Ticketmaster for venues and ticketing services for Taylor Swift's "The Eras" Tour.
8  This tour will be her first since 2018 and will be a "journey through all of the musical
9  eras of [her] career," meaning every one of Swift's ten albums – six of which have
10  either been released or re-recorded since her 2018 tour – are expected to be
11  represented.[1]  As one of the most, if not the most, popular musicians in the world,
12  Taylor Swift has millions of fans who attempted to purchase tickets to her highly
13  anticipated "The Eras" Tour.

14      5.    On or about November 1, 2022, Ticketmaster announced that ticket
15  sales for "The Eras" Tour would begin on November 15, 2022.  The sale, which was
16  expected to face "extremely high demand," would be broken into three phases: (1)
17  the November 15, 2022 TaylorSwiftTix Presale, (2) the November 16, 2022 Capital
18  One Presale, and (3) the November 18, 2022 General Public Sale.

19      6.    Based on information and belief, Ticketmaster intentionally and
20  purposefully misled millions of fans into believing it would prevent bots and scalpers
21  from participating in the presales.  However, millions of fans were unable to
22  purchase tickets during the TaylorSwiftTix Presale and the Capital One Presale, due
23  in large part to unprecedented website traffic caused by Ticketmaster allowing 14
24  million unverified Ticketmaster users and a "staggering"[2] number of bots to
25  participate in the presales.

26   
27  [1]  https://www.cnn.com/2022/11/01/entertainment/taylor-swift-eras-tour/index.html (Last visited on Dec. 20, 2022)
28  [2]https://business.ticketmaster.com/business-solutions/taylor-swift-the-eras-tour-onsale-explained/ (Last visited on Dec. 20, 2022)

CLASS ACTION COMPLAINT

1       7.     Based on information and belief, Ticketmaster knew it would not have
2  sufficient ticket inventory after the presales, but still intentionally and knowingly
3  misled millions of fans into believing they could purchase tickets during the General
4  Public Sale on November 18, 2022.  On November 17, 2022, Ticketmaster canceled
5  the General Public Sale, citing insufficient remaining ticket inventory.

6       8.     Based on information and belief, Defendants' dominant market
7  position has allowed Ticketmaster to charge supracompetitive ticketing fees for its
8  primary ticketing services, which can increase the price of a ticket to the consumer
9  by 20-80% over the ticket's "face value" (which is typically set by the artist, in this
10  case Taylor Swift Management).  Consumers have no choice but to pay these
11  supracompetitive prices set by Ticketmaster.

12       9.     Based on information and belief, Defendants' dominant market
13  position has also allowed Ticketmaster to charge supracompetitive ticketing fees for
14  its secondary ticketing services.  The "face value" price of a secondary (or tertiary,
15  etc.) ticket is set by the ticket seller.  Ticketmaster can then charge fees on *both sides*
16  of the transaction.  A ticket seller therefore must pay a set fee (often a percentage of
17  the "face value" they set for the ticket sale), and the purchaser must also pay a set
18  fee (often, also a percentage of the sale price, as well as other assorted fees).

19      10.    Defendants' dominance over the primary and secondary ticketing
20  services markets has allowed Ticketmaster to dramatically increase its revenues by
21  allowing it to levy monopolistic fees on the second (and third, etc.) sale of the same
22  ticket(s) it sold in the primary sale.  Ticketmaster has leveraged these effects into
23  massive growth for its secondary ticketing service business, which has come at the
24  expense of consumers because it has led to ever more supracompetitive ticketing
25  fees for both primary and secondary ticketing services at major concert venues,
26  including for virtually all venues hosting "The Eras" Tour.

27      11.    The policy and spirit of the California antitrust laws are to promote the
28  free play of competitive market forces and the resulting lower prices to consumers.

1  Ticketmaster is the dominant online venue for concert ticket presale, sale, and resale
2  in the United States and has violated the policy, spirit, and letter of those laws by
3  imposing agreements and policies at the retail and wholesale level that have
4  prevented effective price competition across a wide swath of online ticket sales.

5       12.   Based on information and belief, Ticketmaster claims these agreements
6  and policies improve customer experiences and keep ticket prices down.  This is in
7  spite of the massive number of customer complaints Ticketmaster receives every
8  day, the dramatic increase in ticket prices since Ticketmaster achieved monopoly
9  power, and the excessive service fees Ticketmaster attaches that are far higher than
10 service fees for any similar service in other markets.  Ticketmaster is a monopoly
11 that is only interested in taking every dollar it can from a captive public.

12      13.   California antitrust laws are concerned with protecting market
13 competition and preventing a single, dominant company from setting overly high
14 prices because of its lack of competitors.   Defendants have engaged in
15 anticompetitive conduct to cement their dominance and to harm consumers in
16 California, Washington, and across the United States.

17                    **JURISDICTION AND VENUE**

18      14.   This Court has jurisdiction over this action pursuant to the Class Action
19 Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA").  The matter in controversy,
20 exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is
21 diversity of citizenship between some members of the proposed classes and each
22 Defendant.

23      15.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)
24 because Defendants sell tickets throughout the State of California, including in this
25 District, and caused harm to class members residing in this District.  Moreover, both
26 Ticketmaster and Live Nation maintain their principal places of business in this
27 District.

28      16.   This Court has personal jurisdiction over Defendants because

CLASS ACTION COMPLAINT
4

Defendants have sufficient minimum contacts in the State of California, and/or otherwise intentionally avail themselves of the markets within the State of California, through the sale of concert tickets in this State and to California consumers to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Additionally, both Ticketmaster and Live Nation maintain their principal places of business in California.

**PARTIES**

**Plaintiff**

17.   Plaintiff Michelle Sterioff is a citizen of Washington and resides in Kirkland, Washington.

18.   On November 1, 2022, Plaintiff registered for the TaylorSwiftTix Presale.  In registering for this Presale, Plaintiff saw and relied on Defendants' representation that Ticketmaster's "Verified Fan" program would "level the playing field so that more tickets go to fans who intend to go to the show – and not to ticket bots."[3]

19.   On November 14, 2022, Plaintiff received an email from Ticketmaster saying that "Due to historic demand for Taylor Swift | The Eras Tour, you are currently on the waitlist."

20.   On November 15, 2022, Plaintiff participated in the TaylorSwiftTix Presale but was unable to secure at ticket.

21.   Plaintiff also participated in a Ticketmaster Capital One Cardholder Presale which was held on November 16, 2022.  She again was unable to secure a ticket.

22.   During the Ticketmaster Capital One Cardholder Presale, Plaintiff Sterioff repeatedly tried selecting seats, and each time would get a message that

---

[3]  "Everything you need to know about Ticketmaster Verified Fan" https://blog.ticketmaster.com/verifiedfan-faq/ (Last visited on Dec. 20, 2022)

CLASS ACTION COMPLAINT

5

1    someone else had beat her to the seats.

2        23.    Plaintiff was ultimately unable to purchase tickets during the
3    Ticketmaster Capital One Cardholder Presale.

4        24.    Because Plaintiff was unable to secure any tickets during the
5    Ticketmaster presales, and because she experienced significant technical issues
6    while using Ticketmaster's ticketing platforms, she was forced to purchase tickets
7    through an alternate secondary ticketing service provider after the Ticketmaster
8    General Public Sale was canceled.   Based on information and belief, the "face
9    value" price of these secondary tickets was based on the monopolistic prices charged
10   by Ticketmaster in the prior transaction (*i.e.,* on Ticketmaster's primary or secondary
11   ticketing platform).

12   **Defendants**

13       25.    Defendant Live Nation Entertainment, Inc. (formerly known as Live
14   Nation, Inc.) is a Delaware corporation with its principal place of business at 9348
15   Civic Center Drive, Beverly Hills, California, 90210.  Live Nation is the largest live
16   entertainment company in the world, connecting over half a billion fans across all
17   its platforms in 29 countries.  Live Nation, directly and/or through its agents, is
18   responsible for the promotion of concerts, including concerts in Taylor Swift's "The
19   Eras" Tour.

20       26.    Defendant Ticketmaster, LLC is a wholly-owned subsidiary of Live
21   Nation Entertainment, Inc.  Ticketmaster is a limited liability company organized
22   and existing under the laws of Virginia with its principal place of business at 7060
23   Hollywood Boulevard, Hollywood, California, 90028.  Ticketmaster is the largest
24   ticketing company in the United States, with 2019 revenues of approximately $1.54
25   billion.  Ticketmaster, directly and/or through its agents, is responsible for primary
26   ticketing services and secondary ticketing services for concerts, including concerts
27   in Taylor Swift's "The Eras" Tour.  In performing the anticompetitive acts alleged
28   herein, Ticketmaster acted under the direction and control of, and in coordination

with, Defendant Live Nation Entertainment, and its senior-most executives.

## FACTUAL ALLEGATIONS

### TaylorSwiftTix Presale Registration

27.     Based on information and belief, at all relevant times, Ticketmaster controlled the registration and access to "The Eras" Tour tickets. On or about November 1, 2022, Ticketmaster announced that registration for the TaylorSwiftTix Presale would take place from November 1-9, 2022.  This presale would be powered by Ticketmaster's "Verified Fan" program which promised to "level the playing field so that more tickets go to fans who intend to go to the show – and not to ticket bots."

28.     On November 14, 2022, select "verified" fans of the TaylorSwiftTix Presale were sent an access code, as well as a link via text to the cell phone associated with the Ticketmaster registration.  Each access code allowed the purchase of up to six tickets, and each fan could receive up to three access codes.  This means that a single fan, or a scalper, could purchase as many as eighteen tickets during this presale.

29.     Based on information and belief, thousands of "verified" fans were not sent access codes or were sent codes that did not work.   Plaintiff was "verified" but did not receive an access code.

### TaylorSwiftTix Presale and Capital One Presale

30.     The TaylorSwiftTix presale took place on November 15, 2022.  Based on information and belief, millions of "verified" fans who had received access codes were unable to purchase tickets due to several issues, including but not limited to the following: (a) the access codes did not work, (b) Ticketmaster's website crashed, (c) tickets were removed from the fan's purchases basket before the transaction could be completed, or (d) all available tickets had been purchased.

31.     Ticketmaster also offered a presale for Capital One cardholders, which took place on November 16, 2022.  Cardholders received an email link to access this

1    presale and were instructed to use the last six digits of their cardholder account as

2    an access code.

3        32.     Millions of fans waited up to eight hours during the Capital One Presale

4    but were unable to purchase tickets due to issues similar to those that arose during

5    the TaylorSwiftTix Presale.

6        33.     Ticketmaster had advertised a General Public Sale which was

7    scheduled to begin on November 18, 2022.  On November 17, 2022, Ticketmaster

8    cancelled the General Public Sale, citing the insufficient remaining ticket inventory.

9    **Defendants' Deceptive and Anticompetitive Conduct**

10       34.     Based on information and belief, Ticketmaster intentionally and

11    knowingly misled millions of "verified" fans into believing they would be able to

12    purchase tickets during the TaylorSwiftTix Presale.  Ticketmaster "verified" over

13    3.5 million fans and distributed access codes to approximately 1.5 million fans.  Each

14    access code allowed the purchase of up to six tickets, meaning the 1.5 million access

15    codes could be used to purchase up to *9 million* tickets.  Ticketmaster only allocated

16    2 million tickets for the TaylorSwiftTix presale, and only sold a total of 2.4 million

17    tickets for the entire tour.  Ticketmaster intentionally provided codes and verified

18    fans when it knew the available ticket inventory could not satisfy this demand.

19       35.     Based on information and belief, Ticketmaster intentionally and

20    knowingly misled fans into believing it would prevent bots and scalpers from

21    participating in the presales when, in reality, Ticketmaster permitted a "staggering"

22    amount of bots and scalpers to participate in the presales *and* took affirmative steps

23    to profit from the scalped tickets.  Ticketmaster utilized technology that  that limits

24    a primary (or secondary, etc.) purchaser from transferring tickets, unless those

25    tickets are resold through Ticketmaster's secondary ticketing platform.  This allowed

26    Ticketmaster to remove competition from both the primary and secondary ticketing

27    markets and charge monopolistic ticketing fees every time a single ticket is resold.

28       36.     Based on information and belief, Ticketmaster intentionally and

knowingly misled fans into believing all tickets sold during the TaylorSwiftTix Presale were priced according to the face value prices negotiated by Taylor Swift Management (*i.e.*, at primary purchasing prices).   In reality, Ticketmaster intentionally and knowingly allowed primary ticket purchasers, including bots and scalpers, to *resell* tickets during this presale for double and triple the face value prices.  This means that a consumer who purchases a ticket on a secondary ticketing platform (including, but not limited to, Ticketmaster's platform) could unknowingly purchase a ticket that has already been resold and is therefore triple (or quadruple, etc.) the primary ticket's face value price.

37.    Based on information and belief, Ticketmaster intentionally and knowingly misled fans into believing only "verified" fans could participate in the TaylorSwiftTix Presale.  Instead, Ticketmaster invited unprecedented traffic to its website during the TaylorSwiftTix Presale by allowing 14 million unverified Ticketmaster users and a "staggering"[4] number of bots to participate.

38.    Based on information and belief, Ticketmaster intentionally and knowingly allowed TaylorSwiftTix Presale purchasers to purchase VIP tickets knowing that the mailed portion of the VIP package would be voided and never reach the fan.

39.    Based on information and belief, Ticketmaster intentionally and knowingly misled millions of Capital One cardholders into believing they would be able to purchase tickets during the Capital One Presale.  Ticketmaster knew it could not satisfy the demand for this presale, as less than ten percent of the total tickets were available for this presale.

40.    Based on information and belief, Ticketmaster knew it would not have sufficient ticket inventory after the presales, but still intentionally and knowingly misled millions of fans into believing they could purchase tickets during the General

---

[4]https://business.ticketmaster.com/business-solutions/taylor-swift-the-eras-tour-onsale-explained/ (Last Visited on Dec. 20, 2022)

1  Public Sale on November 18, 2022.

2  41.    Based on information and belief, Ticketmaster intentionally and

3  knowingly sold obstructed view tickets without purchasers knowing that the tickets

4  were for seats with obstructed views.

5  42.    Based on information and belief, Ticketmaster allowed the limited

6  number of ADA-compliant seats to be sold without verification of disability or need,

7  thus depriving individuals with disabilities access to ADA-compliant seats.

8  43.    Defendants' anticompetitive conduct has established a monopoly over

9  the primary and secondary ticketing services markets.  Defendants have leveraged

10  this monopoly to dramatically increase ticketing fees on the second (and third, etc.)

11  sale of the same ticket(s) Ticketmaster sold in the primary sale.

12  44.    Consequently, Plaintiff and the Class members had no choice but to pay

13  supracompetitive ticketing fees for both primary and secondary ticketing services

14  for Taylor Swift's "The Eras" Tour.

15  **CLASS ACTION ALLEGATIONS**

16  45.    Plaintiff brings this class action pursuant to Rule 23 of the Federal

17  Rules of Civil Procedure, individually and on behalf of all members of the following

18  Classes (collectively the Classes are referred to herein as the "Classes"):

19  **Washington Subclass**

20

21  All persons who purchased one or more tickets to Taylor Swift's "The Eras"
Tour in the State of Washington, for personal, family, or household

22  purposes.

23

24  **Nationwide Class**

25  All persons who purchased one or more tickets to Taylor Swift's "The Eras"
Tour in the United States, for personal, family, or household purposes.

26

27

28

46.     Excluded from the Classes are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

47.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes after having had an opportunity to conduct discovery.

48.     Plaintiff is a member of all Classes.

49.     <u>Numerosity:</u> The proposed Classes are so numerous that joinder of all members would be impractical.  Ticketmaster sold approximately 2.4 million tickets to Taylor Swift's "The Eras" Tour.  The number of individuals who suffered damages as a result of Defendants' anticompetitive and misleading conduct is therefore in the millions.  Accordingly, members of the Classes are so numerous that their individual joinder herein is impractical.  While the precise number of members of each of the Classes and their identities are unknown to Plaintiff at this time, the members of the Classes are identifiable and ascertainable.

50.     <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual members of the Classes.  These questions include, but are not limited to, the following:

    a.     Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the advertising, marketing, distribution, and sale of "The Eras" Tour tickets;

    b.     Whether Defendants' coordinated efforts to monopolize the primary and secondary ticketing services markets constitute violations of the Cartwright Act;

---

CLASS ACTION COMPLAINT

1            c.     Whether Defendants engaged in unfair, unlawful and/or

2                   fraudulent business practices;

3            d.     Whether Defendants' unlawful conduct, as alleged herein, was

4                   intentional and knowing;

5            e.     Whether Plaintiff and the Classes are entitled to damages and/or

6                   restitution, and in what amount;

7            f.     Whether Defendants are likely to continue using false,

8                   misleading or unlawful conduct such that an injunction is

9                   necessary; and

10           g.     Whether Plaintiff and the Classes are entitled to an award of

11                   reasonable attorneys' fees, interest, and costs of suit.

12      51.     Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and members of the Classes.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendants' anticompetitive and misleading conduct in connection with its ticketing services for Taylor Swift's "The Eras" Tour.  Each instance of harm suffered by Plaintiff and members of the Classes has directly resulted from a single course of illegal conduct.  Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

22      52.     Superiority: Because of the relatively small size of the claims of the individual members of the Classes, no member of the Classes could afford to seek legal redress on an individual basis.  Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  A class action is superior to any alternative means of prosecution.

53. <u>Typicality</u>: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendants' uniform unlawful conduct as alleged herein.

54. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

55. This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23, including Fed. R. Civ. P. Rule 23(b)(2), because Defendants acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief, both monetary and injunctive, to ensure compatible standards of conduct toward the members of the Classes.

56. Plaintiff reserves the right to alter the definitions of the Classes as she deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Central District of California, and applicable precedent allow.

57. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as individual members of the Classes would use to prove those elements in individual actions alleging the same claims.

## **CLAIMS FOR RELIEF**

### **FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**CAL. CIV. CODE § 1750, *et seq.***
***(for the Nationwide Class; in the alternative, for the Washington Subclass)***
***(against Ticketmaster)***

58. Plaintiff repeats the allegations contained in paragraphs 1-57 above as

---

CLASS ACTION COMPLAINT

13

1  if fully set forth herein.

2      59.    Plaintiff brings this claim individually and on behalf of the Nationwide

3  Class, or in the alternative, for the Washington Subclass, against Ticketmaster.

4      60.    Ticketmaster's offering of tickets to "The Eras" Tour in exchange for

5  monies are "goods" pursuant to California Civil Code § 1761(a).  Further, Plaintiff

6  and members of the Nationwide Class and Washington Subclass are consumers

7  within the meaning of Cal. Civ. Code § 1761(d).

8      61.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or

9  services have sponsorship, approval, characteristics, ingredients, uses, benefits, or

10  quantities that they do not have…"  By allowing primary ticket purchasers to resell

11  tickets during the TaylorSwiftTix Presale, Ticketmaster represented that these tickets

12  were being sold according to the face value prices negotiated by Taylor Swift

13  Management when they were not.  A reasonable consumer would believe that all tickets

14  sold during the TaylorSwiftTix Presale were being sold as primary sales which are

15  priced at face value.  Therefore, Ticketmaster has violated section 1770(a)(5) of the

16  CLRA.

17      62.    Cal. Civ. Code § 1770(a)(10) prohibits "[a]dvertising goods or services

18  with intent not to supply reasonably expectable demand, unless the advertisement

19  discloses a limitation of quantity."  Ticketmaster advertised the Capital One Presale

20  and misled millions of Capital One cardholders into believing they would be able to

21  purchase tickets during this presale.  Ticketmaster intended not to supply reasonably

22  expectable demand for this presale, as it had less than ten percent of the total tickets

23  available, and did not disclose this limited quantity at the time this presale was

24  advertised.   Additionally, Ticketmaster advertised the General Public Sale and

25  misled millions of consumers into believing they would be able to purchase tickets

26  during this sale.  Ticketmaster intended not to supply reasonably expectable demand

27  for this sale, as it reserved no tickets for this sale, and did not disclose this fact at the

28  time  the  sale  was  advertised.    Therefore,  Ticketmaster  has  violated  section

1   1770(a)(10) of the CLRA.

2   63.   Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services

3   with intent not to sell them as advertised."  By allowing primary ticket purchasers to

4   resell tickets during the TaylorSwiftTix Presale, Ticketmaster advertised that these

5   tickets were being sold according to the face value prices negotiated by Taylor Swift

6   Management when they were not.  A reasonable consumer would believe that all tickets

7   sold during the TaylorSwiftTix Presale were being sold as primary sales which are

8   priced at face value.  Therefore, Ticketmaster has violated section 1770(a)(9) of the

9   CLRA.

10   64.   Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject

11   of a transaction has been supplied in accordance with a previous representation when

12   it has not."  By allowing primary ticket purchasers to resell tickets during the

13   TaylorSwiftTix Presale, Ticketmaster represented that these tickets were being sold

14   according to the face value prices negotiated by Taylor Swift Management when they

15   were not.  A reasonable consumer would believe that all tickets sold during the

16   TaylorSwiftTix Presale were being sold as primary sales which are priced at face value.

17   Therefore, Ticketmaster has violated section 1770(a)(16) of the CLRA.

18   65.   At all relevant times, Ticketmaster knew or reasonably should have

19   known that that Plaintiff and members of the Nationwide Class and Washington

20   Subclass relied on the foregoing representations and omissions and continue to be

21   deceived and harmed by Ticketmaster's foregoing unfair practices.

22   66.   Plaintiff and members of the Nationwide Class and Washington

23   Subclass reasonably and justifiably relied on Ticketmaster's misleading

24   representations regarding Taylor Swift's "The Eras" Tour tickets.  Plaintiff and other

25   consumers did not know, and had no reason to know, at the time they purchased or

26   attempted to purchase tickets, about the higher-than-face-value prices of the tickets

27   and/or the limited quantity of available tickets.

28   67.   Plaintiff and members of the Nationwide Class and Washington

Subclass suffered injuries caused by Ticketmaster because they would not have paid money for monopolistically-priced tickets had they known of Ticketmaster's misleading conduct.

68.     Under Cal. Civ. Code § 1780(a), Plaintiff and members of the Classes seek damages, restitution, declaratory and injunctive relief, and all other remedies the Court deems appropriate for Ticketmaster's violations of the CLRA.

69.     Pursuant to Section 1780(d) of the CLRA, Plaintiff has filed, concurrently with this complaint, an affidavit showing that this action was commenced in the proper forum given that Defendants have sold the tickets at issue in this County, and therefore conducts business in this County.

## SECOND CLAIM FOR RELIEF
### Intentional Misrepresentation
***(for the Nationwide Class; in the alternative, for the Washington Subclass)***
***(against Ticketmaster)***

70.     Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

71.     Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative, for the Washington Subclass, against Ticketmaster.

72.     Ticketmaster made misleading statements to Plaintiff and members of the Nationwide Class and Washington Subclass, including but not limited to, statements about the available quantity of tickets, how to get tickets, who would be able to participate in the TaylorSwiftTix Presale, and the price of tickets. Ticketmaster had no intention of following their misleading statements to Plaintiff and members of the Nationwide Class and Washington Subclass. Ticketmaster willfully, purposefully, and intentionally deceived Plaintiff and members of the Nationwide Class and Washington Subclass for its own benefit.

73.     Ticketmaster represented that only "verified" fans would be able to participate in the TaylorSwiftTix Presale, but millions of unverified users were able

to participate and secure tickets.  Many of these unverified users were scalpers, and Ticketmaster profited substantially from scalped tickets because they were resold through Ticketmaster's secondary ticketing platform.

74.     Ticketmaster represented to "verified" fans that they would be able to purchase tickets during the TaylorSwiftTix Presale by provided access codes and verifications.  Ticketmaster knew available ticket inventory could not satisfy this demand.

75.     Ticketmaster represented that all tickets sold during the TaylorSwiftTix Presale were priced according to the face value, but Ticketmaster allowed primary ticket purchasers, including bots and scalpers, to resell tickets at higher prices during this presale.

76.     Ticketmaster represented to Capital One cardholders and the General Public that it could satisfy the demands for the Capital One Presale and the General Public Sale when it could not.

77.     Plaintiff and members of the Nationwide Class and Washington Subclass suffered damages proximately caused by Ticketmaster because they paid money, in an amount to be proven at trial, for monopolistically-priced tickets that they would not have purchased had they known about Ticketmaster's intentional misrepresentations.

78.     Plaintiff and members of the proposed Nationwide Class and Washington Subclass are entitled to attorneys fees by agreement or relevant statutory authority according to proof.

### THIRD CLAIM FOR RELIEF
**Common Law Fraud**
***(for the Nationwide Class; in the alternative, for the Washington Subclass)***
***(against Ticketmaster)***

79.     Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

80.     Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative, for the Washington Subclass, against Ticketmaster.

81.     Ticketmaster has willfully, falsely, and knowingly misrepresented to Plaintiff and members of the Nationwide Class and Washington Subclass, the available quantity of tickets, how to get tickets, who would be able to participate in the TaylorSwiftTix Presale, and the price of tickets.

82.     Ticketmaster represented that only "verified" fans would be able to participate in the TaylorSwiftTix Presale, but millions of unverified users were able to participate and secure tickets.  Many of these unverified users were scalpers, and Ticketmaster profited substantially from scalped tickets because they were resold through Ticketmaster's secondary ticketing platform.

83.     Ticketmaster represented to "verified" fans that they would be able to purchase tickets during the TaylorSwiftTix Presale by provided access codes and verifications.  Ticketmaster knew available ticket inventory could not satisfy this demand.

84.     Ticketmaster represented that all tickets sold during the TaylorSwiftTix Presale were priced according to the face value, but Ticketmaster allowed primary ticket purchasers, including bots and scalpers, to resell tickets at higher prices during this presale.

85.     Ticketmaster represented to Capital One cardholders and the General Public that it could satisfy the demands for the Capital One Presale and the General Public Sale when it could not.

86.     Therefore,  Ticketmaster  has  made  knowing,  fraudulent misrepresentations and omissions as to the sale and resale of Taylor Swift's "The Eras" Tour tickets.

87.     Ticketmaster's misrepresentations and omissions were material (*i.e.*, the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making payment decisions), because they

1  relate to the central means of purchasing highly valuable concert tickets, *i.e.*, how

2  many tickets are available, how to get tickets, and how the tickets are priced.

3       88.    Ticketmaster knew or recklessly disregarded that fact that it would not,

4  or could not, perform the obligations that arose from its representations.

5       89.    Ticketmaster intended that Plaintiff and other consumers rely on these

6  omissions and misrepresentations, as they are pertaining to the facts that, if revealed

7  to consumers, would affect their payment decisions in that they would not have paid

8  money for overpriced tickets.

9       90.    Plaintiff and members of the Nationwide Class and Washington

10 Subclass   have   reasonably   and   justifiably   relied   on   Ticketmaster's

11 misrepresentations and omissions when purchasing tickets and, had the correct facts

12 been known, would not have paid money for merchandise and/or overpriced tickets.

13      91.    Therefore, as a direct and proximate result of Ticketmaster's fraud,

14 Plaintiff and members of the Nationwide Class and Washington Subclass have

15 suffered economic losses and other general and specific damages, including, but not

16 limited to, the amounts paid to purchase overpriced tickets, and any interest that

17 would have accrued on those monies, all in an amount to be proven at trial.

18      92.    Furthermore, Ticketmaster's acts and omissions stated herein constitute

19 fraud as defined in California Civil Code section 3294; therefore, Plaintiff and

20 members of the Nationwide Class and Washington Subclass should recover, in

21 addition to actual damages, damages to make an example of and punish Ticketmaster

22 in an amount to be proven at trial.

23      93.    Plaintiff and members of the Nationwide and Washington Subclass are

24 entitled to attorneys fees by agreement or relevant statutory authority according to

25 proof.

26

27

28

### FOURTH CLAIM FOR RELIEF
**Fraudulent Inducement**
**(*for the Nationwide Class; in the alternative, for Washington Subclass) (against*
*Ticketmaster*)**

94.     Plaintiff repeats the allegations contained in paragraphs 1-57 and 79-93 above as if fully set forth herein.

95.     Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative, for the Washington Subclass, against Ticketmaster.

96.     By way of the wrongful acts and omissions as alleged herein, Ticketmaster will be unjustly enriched if it is able to retain profits from its actions free from any claims by Plaintiff and members of the Nationwide Class and Washington Subclass.

97.     As a direct and proximate result of Ticketmaster's fraud, Plaintiff and members of the Nationwide Class and Washington Subclass have suffered economic losses and other general and specific damages, including, but not limited to, the amounts paid to purchase overpriced tickets, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

98.     Furthermore, Ticketmaster's acts and omissions stated herein constitute fraud as defined in California Civil Code section 3294; therefore, Plaintiff and members of the Nationwide Class and Washington Subclass should recover, in addition to actual damages, damages to make an example of and punish Ticketmaster in an amount to be proven at trial.

99.     Plaintiff and members of the Nationwide Class and Washington Subclass are entitled to attorneys fees by agreement or relevant statutory authority according to proof.

**FIFTH CLAIM FOR RELIEF**
**Antitrust Violations**
***(for the Nationwide Class; in the alternative, for the Washington Subclass)***
***(against Ticketmaster and Live Nation)***

100.   Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

101.   Plaintiff brings these claims individually and on behalf of the Nationwide Class, or in the alternative, for the Washington Subclass, against Ticketmaster and Live Nation.

102.   There is an actual controversy between Plaintiff and members of the Nationwide Class and the Washington Subclass, on the one hand, and Defendants, on the other hand, as to their rights, obligations, and interests concerning a contract.

103.   Due to this actual controversy, Plaintiff and members of the Nationwide Class and the Washington Subclass are entitled to a determination of their rights and obligations concerning a contract pursuant to an equitable order of declaratory relief.

104.   Defendants' coordinated illegal efforts to (a) force consumers to purchase and sell Tickets exclusively through Ticketmaster's primary and secondary ticketing platforms, and (b) coerce artists, such as Taylor Swift, to exclusively market and promote Ticketmaster, has not and will not achieve legitimate efficiency benefits to counterbalance their demonstrated anticompetitive effects, including the supracompetitive fees Ticketmaster is able to charge for its ticketing services.

105.   Defendants' coordinated efforts to monopolize the primary and secondary ticketing services markets constitute violations of the Cartwright Act.

106.   As a result of Defendants' violations of the Cartwright Act, Plaintiff and members of the Nationwide Class and the Washington Subclass have been, and will continue to be, injured in an amount to be proven at trial.

1         **1.    FIRST ANTITRUST CLAIM**

2                      **Unlawful Tying**

3         107.   Plaintiff repeats the allegations contained in paragraphs 1-57 above as

4    if fully set forth herein.

5         108.   <u>First</u>, Defendants monopolized the primary ticketing services market

6    by tying Live Nation's concert promoting services to Ticketmaster's primary

7    ticketing services, in violation of Cal. Bus. & Prof. Code § 16727, *et. seq*.

8         109.   The provision of concert promotion services and primary ticketing

9    services are two separate services or products.

10        110.   Since Ticketmaster and Live Nation merged in 2010, Defendants have

11   coerced major concert venue operators to enter into long-term exclusive contracts

12   by threatening them with less (or no) Live Nation tours if they did not select

13   Ticketmaster as their exclusive primary ticketing service provider.    Thus,

14   Defendants have conditioned the provision of Live Nation's concert promotion

15   services on the use of Ticketmaster's primary ticketing services.

16        111.   Defendants have sufficient economic power in the relevant market for

17   concert promotion services to enable them to restrain trade in the relevant market for

18   primary ticketing services.

19        112.   Defendants' conduct has affected a not insubstantial amount of

20   commerce in the provision of primary ticketing services for major concert venues.

21        113.   Defendants' conduct has had an anticompetitive effect in the relevant

22   market for primary ticketing services for major concert venues.

23        114.   <u>Second</u>, Defendants monopolized the secondary ticketing services

24   market by tying the provision of primary ticketing services for major concert venues

25   to secondary ticketing services for major concert venues.

26        115.   The provision of primary ticketing services for major concert venues

27   and secondary ticketing services for major concert venues are two separate services

28   or products.   Taylor Swift tickets sold in the primary ticketing market are distinct

1  products from Taylor Swift tickets sold in the secondary ticketing market.

2  116.  By way of, *inter alia*, placing technological limitations on primary

3  ticket transferability, Defendants have conditioned the provision of Ticketmaster's

4  primary ticketing services on the use of secondary ticketing services from

5  Ticketmaster.

6  117.  Defendants have sufficient economic power in the relevant market for

7  primary ticketing services for major concert venues to enable them to restrain trade

8  in the relevant market for secondary ticketing services for major concert venues.

9  118.  Defendants' conduct has affected a not insubstantial amount of

10  commerce in the provision of primary ticketing services for major concert venues

11  and secondary ticketing services for major concert venues.

12  119.  Defendants' conduct has had an anticompetitive effect in the relevant

13  markets for primary ticketing services for major concert venues and secondary

14  ticketing services for major concert venues.

15  120.  There are no legitimate business justifications or efficiencies for either

16  of Defendants' tying arrangements that counterbalance their demonstrated

17  anticompetitive effects.

18  121.  As a result of Defendants' illegal tying arrangements, Plaintiff and

19  members of the Nationwide Class and the Washington Subclass have been, and will

20  continue to be, injured in an amount to be proven at trial.

21  122.  Plaintiff and members of the Nationwide Class and the Washington

22  Subclass are entitled to attorneys fees by agreement or relevant statutory authority

23  according to proof.

24  **2.   SECOND ANTITRUST CLAIM**

25  **Exclusive Dealings**

26  123.  Plaintiff repeats the allegations contained in paragraphs 1-57 above as

27  if fully set forth herein.

28  124.  Defendants have used Live Nation's dominance in the promotion

services market to force concert venue operators to enter into long-term exclusive dealing arrangements with respect to the provision of primary and secondary ticketing services, in violation of Cal. Bus. & Prof. Code § 16727.

125.   These exclusive dealing arrangements have had the effect of foreclosing competition in a substantial share of the line of commerce affected and the relevant market for primary and secondary ticketing services for major concert venues.

126.   Defendants' exclusive dealing arrangements cannot be circumvented.

127.   Defendants' exclusive dealing arrangements are of long duration and not easily terminable as a matter of practical economics.

128.   Defendants have coerced major concert venues to enter into these exclusive dealing arrangements.

129.   Defendants' exclusive dealing arrangements are not the product of competition.

130.   Defendants' exclusive dealing arrangements have had the effect of substantially lessening competition and tending to create a monopoly in the relevant markets for primary and secondary ticketing services for major concert venues. Defendants have used that monopoly power in a predatory, exclusionary, and anticompetitive manner to monopolize, on information and belief, the relevant market for secondary ticketing services for major concert venues.

131.   As a result of Defendants' illegal exclusive dealing arrangements, Plaintiff and members of the Nationwide Class and the Washington Subclass have been, or will be, injured in an amount to be proven at trial.

132.   Plaintiff and members of the Nationwide Class and the Washington Subclass are entitled to attorneys fees by agreement or relevant statutory authority according to proof.

1

## 3.    THIRD ANTITRUST CLAIM

2

### Vertically-Arranged Boycotting

3    133.   Plaintiff repeats the allegations contained in paragraphs 1-57 above as

4    if fully set forth herein.

5    134.   Defendants have induced and coerced venues to boycott Ticketmaster's

6    competitors for the provision of primary ticketing services.

7    135.   By way of, *inter alia*, building in and applying technological limitations

8    on primary ticket transferability, Defendants have agreed with and/or coerced ticket

9    brokers and other ticket resellers to boycott Ticketmaster's competitors for the

10   provision of secondary ticketing services.

11   136.   Defendants' conduct has foreclosed access to the relevant market for

12   primary ticketing services for major concert venues, which is necessary to enable

13   Ticketmaster's primary ticketing service competitors to compete.

14   137.   Defendants' conduct has foreclosed access to the relevant market for

15   secondary ticketing services for major concert venues, which is necessary to enable

16   Ticketmaster's secondary ticketing service competitors to compete.

17   138.   Ticketmaster possesses a dominant position in the relevant markets for

18   primary ticketing services for major concert venues and secondary ticketing services

19   for major concert venues.

20   139.   Defendants' conduct is not justified, because their conduct is not

21   intended to enhance overall efficiency and to make the relevant markets more

22   efficient.

23   140.   Defendants' conduct has a substantial effect on commerce.

24   141.   Live Nation promoted, encouraged, aided, assisted, and/or directed

25   Ticketmaster's conduct alleged above.  Live Nation also independently participated

26   in the anticompetitive scheme as alleged herein.

27   142.   Plaintiff and members of the Nationwide Class and the Washington

28   Subclass have been, or will be, injured as a result of Defendants' conduct.

143.   Plaintiff and members of the Nationwide Class and the Washington Subclass have suffered, and will suffer, injury of the type that the antitrust laws were intended to prevent.  They have and will be injured by the harm to competition as a result of Defendants' conduct.

## SIXTH CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***
***(for the Nationwide Class; in the alternative, for the Washington Subclass)***
***(against Ticketmaster and Live Nation)***

144.   Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

145.   Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class, or in the alternative, for the Washington Subclass, against Ticketmaster and Live Nation.

146.   UCL § 17200 provides, in pertinent part, that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."  Cal. Bus. & Prof. Code § 17200.

147.   Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

148.   Defendants' misrepresentations and omissions, and their anticompetitive conduct, relating to their primary and secondary ticketing services were and continue to be "unlawful" because they violate the CLRA, the Cartwright Act, and other applicable laws as described herein.

149.   As a result of Defendants' unlawful business acts and practices, Defendants have and continue to unlawfully obtain money from Plaintiff and members of both the Nationwide Class and Washington Subclass.

150.   Under the UCL, a business act or practice is "unfair" if the defendant's conduct is substantially injurious to consumers, offends public policy, and is

immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

151. Ticketmaster's conduct was and continues to be of no benefit to users of Ticketmaster's primary ticketing platform and any secondary ticketing platform to purchase tickets to "The Eras" Tour because it is misleading, unfair, unlawful, and is injurious to consumers who paid money to purchase tickets and were deceived by Ticketmaster's fraudulent omissions and misrepresentations.  Deceiving consumers about the available quantity of tickets, how to get tickets, and who would be able to participate in the TaylorSwiftTix Presale is of no benefit to consumers. Therefore, Ticketmaster's conduct was and continues to be "unfair."

152. As a result of Defendants' unfair business acts and practices, Ticketmaster has obtained and will continue to unfairly obtain money from Plaintiff and members of both the Nationwide Class and Washington Subclass.

153. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

154. Ticketmaster's conduct here was and continues to be fraudulent because it has deceived and will likely continue to deceive consumers by failing to accurately disclose the available quantity of tickets, how to get tickets, who would be able to participate in the TaylorSwiftTix Presale, and the price of tickets.  Because Ticketmaster misled, and will likely continue to mislead, Plaintiff and members of the Nationwide Class and Washington Subclass, Ticketmaster's conduct was "fraudulent."

155. As a result of Ticketmaster's fraudulent business acts and practices, Ticketmaster has obtained and continues to fraudulently obtain money from Plaintiff and members of the Nationwide Class and Washington Subclass.

156. Plaintiff requests that this Court cause Defendants to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of

1   the Nationwide Class and Washington Subclass, to disgorge the profits Defendants

2   made on these transactions, and to enjoin Defendants from violating the UCL or

3   violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff

4   and members of the Nationwide Class and Washington Subclass may be irreparably

5   harmed and/or denied an effective and complete remedy if such an order is not

6   granted.

7       157.   Monetary damages are an inadequate remedy at law because injunctive

8   relief is necessary to deter Defendants from continuing their false and deceptive

9   conduct regarding their primary and secondary ticketing services.

10  **SEVENTH CLAIM FOR RELIEF**
    **Violation of California's False Advertising Law,**
11  **California Business & Professions Code §§ 17500, *et seq.***
    ***(for the Nationwide Class; in the alternative, for the Washington Subclass)***
12  ***(against Ticketmaster)***
13

14      158.   Plaintiff repeats the allegations contained in paragraphs 1-57 above as

15  if fully set forth herein.

16      159.   Plaintiff brings this claim individually and on behalf of the members of

17  the Nationwide Class, or in the alternative, for the Washington Subclass, against

18  Ticketmaster pursuant to California's False Advertising Law ("FAL").

19      160.   The FAL makes it "unlawful for any person…to make or disseminate

20  or cause to be made or disseminated from this state before the public in any state,

21  in…any advertising device…or in any other manner or means whatever, including

22  over the Internet, any statement, concerning…those services, professional or

23  otherwise, or concerning any circumstance or matter of fact connected with the

24  proposed performance or disposition thereof, which is untrue or misleading, and

25  which is known, or which by the exercise of reasonable care should be known, to be

26  untrue or misleading…"  Cal. Bus. & Prof. Code § 17500.

27      161.   Ticketmaster has and continues to make representations to the public,

28  including Plaintiff and members of the Nationwide Class and Washington Subclass,

1  through its deceptive internet advertising, about how many tickets were available,

2  how to get tickets, who could participate in the TaylorSwiftTix Presale, and how the

3  tickets were priced.  Because Ticketmaster has disseminated misleading information

4  regarding its services, and Ticketmaster knows, knew, or should have known

5  through the exercise of reasonable care that the representations were and continue to

6  be misleading, Ticketmaster has violated the FAL.

7      162.  As a result of Ticketmaster's false advertising, Ticketmaster has and

8  continues to unlawfully cause Plaintiff and members of the Nationwide Class and

9  Washington Subclass to sustain money damages including, but not limited to, the

10  amounts paid to purchase overpriced tickets, and any interest that would have

11  accrued on those monies, all in an amount to be proven at trial.

12      163.  Plaintiff requests that this Court cause Ticketmaster to restore this

13  fraudulently obtained money to herself and members of the Nationwide Class and

14  Washington Subclass, to disgorge the profits Ticketmaster made on these

15  transactions, and to enjoin Ticketmaster from violating the FAL or violating it in the

16  same fashion in the future as discussed herein.  Otherwise, Plaintiff and members of

17  the Nationwide Class and Washington Subclass may be irreparably harmed and/or

18  denied an effective and complete remedy if such an order is not granted.

19  **EIGHTH CLAIM FOR RELIEF**
**Quasi-Contract/Restitution/Unjust Enrichment**

20  ***(for the Nationwide Class; in the alternative, for the Washington Subclass)***

21  ***(against Ticketmaster and Live Nation)***

22

23      164.  Plaintiff repeats the allegations contained in paragraphs 1-57 above as

24  if fully set forth herein.

25      165.  Plaintiff brings this claim individually and on behalf of the members of

26  the Nationwide Class, or in the alternative, for the Washington Subclass, against

27  Ticketmaster and Live Nation.

28      166.  As alleged herein, Defendants intentionally, recklessly, and/or

1   negligently omitted and misrepresented material information about the available
2   quantity of tickets, how to get tickets, who would be able to participate in the
3   TaylorSwiftTix Presale, and the price of tickets to induce them to pay monopolistic
4   prices for tickets.  Plaintiff and members of the Nationwide Class and Washington
5   Subclass have reasonably relied on the misleading omissions and representations.
6   Plaintiff and members of the Nationwide Class and Washington Subclass have
7   therefore been induced by Defendants' misleading and false omissions and
8   representations about their primary and secondary ticketing services, and paid
9   money for and as a result of said services, when they otherwise would not have.

10       167.  Plaintiff and members of the Nationwide Class and Washington
11   Subclass have conferred a benefit upon Defendants, as Defendants have retained
12   monies paid to them (directly or indirectly) by Plaintiff and members of the
13   Nationwide Class and the Washington Subclass.

14       168.  The monies received were obtained under circumstances that were at
15   the expense of Plaintiff and members of the Nationwide Class and Washington
16   Subclass – *i.e.,* Plaintiff and members of the Nationwide Class and Washington
17   Subclass did not receive the full value of the benefit conferred upon Defendants
18   because Defendants misrepresented how difficult it would be to secure tickets, and
19   how competitive the ticket prices would be.

20       169.  Therefore, it is inequitable and unjust for Defendants to retain the profit,
21   benefit, or compensation conferred upon them without paying Plaintiff and members
22   of the Nationwide Class and Washington Subclass back for the difference of the full
23   value of the benefit compared to the value actually received.

24       170.  As a direct and proximate result of Defendants' unjust enrichment,
25   Plaintiff and members of the Nationwide Class and Washington Subclass are entitled
26   to restitution, disgorgement, and/or the imposition of a constructive trust upon all
27   profits, benefits, and other compensation obtained by Defendants from their
28   deceptive, misleading, and unlawful conduct as alleged herein.

171.   Monetary damages are an inadequate remedy at law because injunctive relief is necessary to deter Defendants from continuing their false and deceptive conduct regarding their primary and secondary ticketing services.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Classes, respectfully requests the following relief:

A.   certifying the proposed Classes under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.   declaring that Defendants are financially responsible for notifying the members of the Classes of the pendency of this suit;

C.   declaring that Defendants have committed the violations of law alleged herein;

D.   providing for any and all injunctive relief the Court deems appropriate;

E.   awarding statutory damages in the maximum amount for which the law provides;

F.   awarding monetary damages, including, but not limited to, any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G.   providing for any and all equitable monetary relief the Court deems appropriate;

H.   awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I.   awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees;

J.   awarding pre- and post-judgment interest to the extent the law allows; and

K.   providing such further relief as this Court may deem just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Date: December 20, 2022                    Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Lisa T. Omoto*
Lisa T. Omoto (SBN 303830)
*lomoto@faruqilaw.com*
1901 Avenue of the Stars, Suite 1060
Los Angeles, California 90067
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

**WALSH P.L.L.C.**
Bonner C. Walsh (*pro hac vice*
forthcoming)
*Bonner@walshpllc.com*
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206

*Counsel for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Michelle Sterioff, declare as follows:

1.   I am a Plaintiff in this action and a citizen of the State of Washington. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.   This Class Action Complaint is filed in the proper place of trial because Defendants have sold the tickets at issue in this County, and therefore conducts business in this County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, executed on December 16, 2022, at Kirkland, Washington.

Michelle Sterioff