1  LATHAM & WATKINS LLP
     Timothy L. O'Mara (Bar No. 212731)
2      *tim.o'mara@lw.com*
     Kirsten M. Ferguson (Bar No. 252781)
3      *kirsten.ferguson@lw.com*
     Robin L. Gushman (Bar No. 305048)
4      *robin.gushman@lw.com*
   505 Montgomery Street, Suite 2000
5  San Francisco, California 94111-6538
   Telephone: +1.415.391.0600
6  Facsimile: +1.415.395.8095

7  *Attorneys for Defendants Ticketmaster L.L.C.*
   *and Live Nation Entertainment, Inc.*

8

9

10                    **UNITED STATES DISTRICT COURT**

11                    **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| MICHELLE STERIOFF, individually and on behalf of all others similarly situated, | Case No. 2:22-cv-09230-GW-GJS |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| v. | The Honorable George H. Wu |
| LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER, LLC, | |
| Defendants. | Hearing Date:  TBD |
| | Hearing Time:  8:30 a.m. |
| | Courtroom:  9D, 9th Floor |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 2

    A.      Plaintiff's Claims ..................................................................................... 2

    B.      The Terms ................................................................................................. 3

    C.      Plaintiff's Agreement to the Terms ......................................................... 4

        1.      Plaintiff's Participation in the Onsale for The Eras Tour .............................................................................................. 5

        2.      Plaintiff's Acceptance of Ticket Transfers................................. 7

        3.      Plaintiff's Other Recent Ticket Purchases................................. 9

III.    LEGAL STANDARD ......................................................................................... 10

IV.     ARGUMENT ..................................................................................................... 11

    A.      Plaintiff Assented to the Terms on Multiple Occasions ................... 11

    B.      The Parties Clearly and Unmistakably Delegated Arbitrability to the Arbitrator................................................................. 13

    C.      The Arbitration Agreement Plainly Encompasses the Dispute at Issue ......................................................................................... 15

    D.      The Court Should Dismiss This Action........................................... 17

V.      CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Ajzenman v. Off. of Comm'r of Baseball*,
   No. 20-cv-3643, 2020 WL 6031899 (C.D. Cal. Sept. 14, 2020) ....... 4, 7, 11, 12

*Andrews v. Michaels Store, Inc.*,
   No. 21-cv-02294, 2021 WL 4813760 (C.D. Cal. Sept. 15, 2021) ................... 15

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ................................................................................ 10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ................................................................................ 15

*Augustine v. TLC Resorts Vacation Club, LLC*,
   No. 18-cv-01120, 2018 WL 3913923 (S.D. Cal. Aug. 16, 2018) ................... 15

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ................................................................. 11

*Cayanan v. Citi Holdings, Inc.*,
   928 F. Supp. 2d 1182 (S.D. Cal. 2013) ..................................................... 15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ................................................................. 17

*Dickey v. Ticketmaster LLC*,
   No. 18-cv-9052, 2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ...... 4, 12, 13, 14

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ..................................................................... 10, 17

*Hansen v. Ticketmaster Ent., Inc.*,
   No. 20-cv-02685, 2020 WL 7319358 (N.D. Cal. Dec. 11, 2020) ............ 4, 7, 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ....................................................................... 11, 13

*Himber v. Live Nation Worldwide, Inc.*,
   No. 16-cv-5001, 2018 WL 2304770 (E.D.N.Y. May 21, 2018) .............. 4, 8, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-cv-09230-GW-GJS

*In re Grice*,
   974 F.3d 950 (9th Cir. 2020) .......................................................................... 10

*In re Holl*,
   925 F.3d 1076 (9th Cir. 2019) ........................................................................ 12

*In re Ring LLC Priv. Litig.*,
   No. 19-cv-10899, 2021 WL 2621197 (C.D. Cal. June 24, 2021) ................... 12

*Johnmohammadi v. Bloomingdale's, Inc.*,
   755 F.3d 1072 (9th Cir. 2014) ........................................................................ 17

*Johnson v. Oracle Am., Inc.*,
   No. 17-cv-05157, 2017 WL 8793341 (N.D. Cal. Nov. 17, 2017) .................. 14

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020) ...................................................... 4, 7, 8, 12

*Lee v. Ticketmaster L.L.C.*,
   No. 18-cv-05987, 2019 WL 9096442 (N.D. Cal. Apr. 1, 2019),
   *aff'd*, 817 F. App'x 393 (9th Cir. 2020) ................................................ 2, 12, 14

*Nevarez v. Forty Niners Football Co., LLC*,
   No. 16-cv-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ..... 5, 8, 12, 14

*Oberstein v. Live Nation Ent., Inc.*,
   No. 21-56200, 2023 WL 1954688 (9th Cir. Feb. 13, 2023), aff'g
   No. 20-cv-3888, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) .............*passim*

*Peterson v. Lyft*,
   No. 16-cv-07343, 2018 WL 6047085 (N.D. Cal. Nov. 19, 2018) .................. 17

*Schwendeman v. Health Carousel, LLC*,
   No. 18-cv-07641, 2019 WL 6173163 (N.D. Cal. Nov. 20, 2019) .................. 14

**STATUTES**

9 U.S.C. § 2 .................................................................................................. 10

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

iii

MEM. OF POINTS & AUTHS. ISO
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-cv-09230-GW-GJS

## I.    INTRODUCTION

Plaintiff Michelle Sterioff brought this putative class action against Defendants Ticketmaster and Live Nation for purported damages related to Ticketmaster's onsale[1] for the Taylor Swift | The Eras Tour.  Plaintiff, however, agreed on numerous occasions to arbitrate her claims against Defendants.[2]  For example, Plaintiff repeatedly assented to Ticketmaster and Live Nation's Terms of Use (the "Terms") when she signed in to her Ticketmaster account to register for and participate in Ticketmaster's presales for The Eras Tour, when she accepted a transfer of tickets to The Eras Tour through her Ticketmaster account, and when she purchased tickets on Ticketmaster's sites.  Those Terms contain a mandatory arbitration agreement which broadly applies to <u>any</u> claims relating to the use of Ticketmaster and Live Nation's sites, products, or services.

The Ninth Circuit recently enforced Ticketmaster and Live Nation's Terms, based on the same and similar notices provided to Plaintiff.  Specifically, in *Oberstein v. Live Nation Entertainment, Inc.*, the Ninth Circuit held that notices on "the Ticketmaster and Live Nation websites provided reasonably conspicuous notice of the Terms," that, by clicking on the action buttons associated with those notices, users "unambiguously manifested assent" to the Terms, and that "the Terms, including the arbitration provision, [are therefore] valid and binding" on users.

---

[1]    "Onsale" is an industry term of art; it typically includes all manner of sales generally available to the public, including presales.  The onsale for The Eras Tour included the "TaylorSwiftTix" presale and the "Capital One Cardholder" presale. Decl. of K. Tobias in Support of Defs.' Mot. to Compel Arb. ("Tobias Decl.") ¶ 9. Plaintiff participated in both of those presales.  *See* Compl. ¶¶ 20–21, ECF No. 1.

[2]    The parties stipulated to limit briefing on Defendants' motion to compel arbitration to the following issues: (1) whether Plaintiff assented to Defendants' Terms of Use, (2) whether the arbitration provision therein delegates arbitrability to the arbitrator, and (3) whether the arbitration provision encompasses Plaintiff's claims.   Joint Stip. Setting Briefing Schedule ¶ 4, ECF No. 24 ("Joint Stip."). Defendants' opening motion is therefore limited to those issues in accordance with the parties' agreement.  Pursuant to that agreement, Defendants reserve the right to make and/or respond to arguments relating to other issues after this Court rules on the pending motion to compel arbitration in *Heckman v. Live Nation Entertainment, Inc., et al.*, Case No. 22-cv-00047 (C.D. Cal.).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

No. 21-56200, 2023 WL 1954688, at *7–9 (9th Cir. Feb. 13, 2023), *aff'g* No. 20-cv-3888, 2021 WL 4772885, at *6–7 (C.D. Cal. Sept. 20, 2021) (Wu, J.). The Ninth Circuit's ruling in *Oberstein* is dispositive here: Plaintiff was presented with the <u>exact same</u> sign-in notice at issue in *Oberstein* (as well as other, similar notices) many times. Per the Ninth Circuit's ruling, that notice of the Terms provides constructive notice to users like Plaintiff as a matter of law. *See id.* at *9–10. Plaintiff is therefore bound by the Terms—including the arbitration agreement, which clearly and unmistakably delegates all questions relating to the interpretation, applicability, enforceability, or formation of the agreement to the arbitrator. As this Court and others have held many times over, the Court's analysis stops there. *See, e.g.*, *Oberstein*, 2021 WL 4772885, at *7–8; *Lee v. Ticketmaster L.L.C.*, No. 18-cv-05987, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020).

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Claims

Plaintiff purports to bring a class action on behalf of two putative classes of consumers "who purchased one or more tickets to Taylor Swift's 'The Eras' Tour . . . for personal, family, or household purposes"—in Washington state and nationwide. Compl. ¶ 45. Plaintiff alleges violations of California's Consumers Legal Remedies Act, California's Unfair Competition Law, California's False Advertising Law—and also asserts fraud-related and quasi-contract claims—based on Ticketmaster's advertisement of, management of, and representations about The Eras Tour onsale, including the TaylorSwiftTix and Capital One Cardholder presales. *See id.* ¶¶ 58–99, 144–171. In addition, Plaintiff alleges various antitrust violations based on Defendants' purported "efforts to (a) force consumers to purchase and sell Tickets exclusively through Ticketmaster's primary and secondary ticketing platforms, and (b) coerce artists, such as Taylor Swift, to exclusively market and promote Ticketmaster." Compl. ¶¶ 100–106; *see also id.* ¶¶ 107–143.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

Plaintiff claims that all of this alleged conduct forced her and other putative class members to pay supracompetitive prices for tickets to The Eras Tour.  *Id.* ¶¶ 8–10, 24, 36, 43–44, 66–67, 77, 90–91, 97, 104, 162, 166.  These purported injuries, Plaintiff alleges, "flow, in each instance, from a common nucleus of operative fact, namely, Defendants' anticompetitive and misleading conduct in connection with its ticketing services for Taylor Swift's 'The Eras' Tour."  *Id.* ¶ 51.

## B.    The Terms

Since 2011, Defendants' Terms have contained a provision whereby users expressly agree to submit their claims against Defendants to binding arbitration. Tobias Decl. ¶¶ 20–22 & Exs. 14–18.  The current Terms, which have been operative since July 2, 2021, provide that:

> **YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY DISPUTE, CLAIM, OR CONTROVERSY RELATING IN ANY WAY TO THE TERMS, YOUR USE OF THE SITE, OR PRODUCTS OR SERVICES SOLD, DISTRIBUTED, ISSUED, OR SERVICED BY OR THROUGH US—IRRESPECTIVE OF WHEN THAT DISPUTE, CLAIM, OR CONTROVERSY AROSE—WILL BE RESOLVED SOLELY BY BINDING, INDIVIDUAL ARBITRATION AS SET FORTH IN THE TERMS, RATHER THAN IN COURT. YOU AND WE THEREBY EACH AGREE TO WAIVE ANY RIGHT TO A JURY TRIAL, AND AGREE THAT YOU AND WE MAY BRING CLAIMS AGAINST EACH OTHER ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** . . .

> **Governing Law; Interpretation and Enforcement**. The arbitration agreement in the Terms is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) ("FAA"), including its procedural provisions, in all respects. This means that the FAA governs, among other things, the interpretation and enforcement of this arbitration agreement and all of its provisions, including, without limitation, the class action waiver. State arbitration laws do not govern in any respect. Further, you and we each agree that the Terms evidence a transaction involving interstate commerce, and will be governed by and construed in accordance with

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

federal law to the fullest extent possible. . . .

**Delegation; Interpretation**. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable; however, in the event of a dispute about which particular version of this Agreement you agreed to, a court will decide that specific question. This arbitration agreement is intended to be broadly interpreted and will survive termination of the Terms.

Tobias Decl. Ex. 14. Prior versions of the Terms were similar. *See id.* Exs. 15–18.

## C.   Plaintiff's Agreement to the Terms

To make even a single purchase on Defendants' websites and applications, users must agree to the Terms at numerous, distinct times—including, for example, at account creation, account sign-in, and ticket purchase. Tobias Decl. ¶¶ 6, 11–12 & Exs. 1-2, 3-4, 6-8.[3] The Ninth Circuit, in a binding decision, recently found each of these points of assent to be valid and binding. *See Oberstein*, 2023 WL 1954688, at *7–9, *aff'g* 2021 WL 4772885, at *6–7. This Court and numerous others have reached the same conclusion in other cases. *See, e.g.*, *Hansen v. Ticketmaster Ent., Inc.*, No. 20-cv-02685, 2020 WL 7319358, at *1, *5 (N.D. Cal. Dec. 11, 2020) (Ticketmaster "Sign In" page); *Ajzenman v. Off. of Comm'r of Baseball*, No. 20-cv-3643, 2020 WL 6031899, at *2, *4 (C.D. Cal. Sept. 14, 2020) (Ticketmaster "Sign In" and purchase pages); *Dickey v. Ticketmaster LLC*, No. 18-cv-9052, 2019 WL 9096443, at *5–7 (C.D. Cal. Mar. 12, 2019) (Ticketmaster "Sign Up" page); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020) (Ticketmaster "Sign

---

[3]    In addition, at the bottom of virtually every Live Nation and Ticketmaster website page that users navigate in the ticket selection and purchase process, there is a notice that, by using the site, users are agreeing to the Terms. *Id.* ¶ 18 & Exs. 12-13. Courts have also found that this notice provides constructive notice of the Terms. *See Himber v. Live Nation Worldwide, Inc.*, No. 16-cv-5001, 2018 WL 2304770, at *5 (E.D.N.Y. May 21, 2018).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

In" and purchase pages); *Nevarez v. Forty Niners Football Co., LLC*, No. 16-cv-07013, 2017 WL 3492110, at *7–10 (N.D. Cal. Aug. 15, 2017) (Ticketmaster account creation, sign-in, and purchase pages).

Here, Plaintiff affirmatively accepted the Terms—including the arbitration agreement—when she created her account on July 3, 2018, and, subsequently, each time she signed in to her account, and each time she purchased her tickets. *See* Tobias Decl. ¶¶ 5–7; Decl. of H. Green in Support of Defs.' Mot. to Compel Arb. ("Green Decl.") ¶ 5. She also accepted the Terms and arbitration agreement when registering for presales, and when she accepted ticket transfers through Ticketmaster. Tobias Decl. ¶¶ 8–11, 15–17; Green Decl. ¶¶ 7–9. As a result, over the years, Plaintiff has accepted Defendants' Terms more than a dozen times. *See* Tobias Decl. ¶¶ 5–6, 8–12, 15–17; Green Decl. ¶¶ 5–9. To streamline this motion, the factual discussion will focus on Plaintiff's recent acceptances of the <u>current</u> Terms—including her acceptance of the Terms in connection with The Eras Tour, which forms the basis of her Complaint.

### 1.    *Plaintiff's Participation in the Onsale for The Eras Tour*

In November 2022, Plaintiff registered for and participated in the onsale for The Eras Tour. Specifically, on November 1, 2022, Plaintiff used her Ticketmaster account to register for the TaylorSwiftTix presale. Compl. ¶ 18; Greene Decl. ¶ 6. To do so, she had to sign in to her Ticketmaster account, and complete the registration through her account. Tobias Decl. ¶ 9. The TaylorSwiftTix presale subsequently took place on November 15, 2022; Plaintiff participated in that presale and attempted to purchase tickets. Compl. ¶ 20. To do so, Plaintiff had to sign in to her Ticketmaster account.[4] Tobias Decl. ¶¶ 9–10. Later, on November 16, 2022, Plaintiff also participated in the Capital One Cardholder presale for The Eras Tour

---

[4]    In order to participate in the TaylorSwiftTix presale, all users—including Plaintiff—were required to sign in to their Ticketmaster accounts <u>before</u> attempting to purchase tickets. Tobias Decl. ¶ 9.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

1    and attempted to purchase tickets.  Compl. ¶ 21.  Again, to do so, Plaintiff had to

2    sign in to her Ticketmaster account.[5]  Tobias Decl. ¶¶ 9–10.

3          Each time she signed in to her account—to register for TaylorSwiftTix

4    presale, and to participate in both the TaylorSwiftTix presale and Capital One

5    Cardholder presale—Plaintiff assented to the current Terms.  Specifically, on the

6    sign-in page, she was notified: "By continuing past this page, you agree to the **Terms**

7    **of Use** and understand that information will be used as described in our **Privacy**

8    **Policy**."  The words "Terms of Use" appeared in bold, bright blue, color-contrasting

9    text, immediately above the "Sign in" button, and hyperlinked directly to the full

10   text of the current Terms:

11

12

13

14

15

16

17

18

19

20

21

22

23   *See* Tobias Decl. ¶ 11.  This is the <u>exact same</u> notice that the Ninth Circuit recently

24   held provides constructive notice, binding users to the Terms and the arbitration

25

26   ───────────────────

27   [5]     Unlike the TaylorSwiftTix presale, the Capital One Cardholder presale did
     not require pre-registration; rather, the purchaser needed to use a Capital One card
     at checkout.  Like the TaylorSwiftTix presale, however, all users—including
28   Plaintiff—were required to sign in to their Ticketmaster accounts <u>before</u> attempting
     to purchase tickets.  Tobias Decl. ¶ 9.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

1   agreement therein. *See Oberstein*, 2023 WL 1954688, at *7–9, *aff'g* 2021 WL

2   4772885, at *6–7; *see also Hansen*, 2020 WL 7319358, at *1, *5 (also finding that

3   the same notice provides constructive notice of the Terms); *Ajzenman*, 2020 WL

4   6031899, at *1–2, *4 (same); *see also Lee*, 817 F. App'x at 394–95 (finding that

5   substantially identical notice provides constructive notice).

6   ## 2.   *Plaintiff's Acceptance of Ticket Transfers*

7   Plaintiff alleges that she was unable to secure tickets through Ticketmaster

8   during the TaylorSwiftTix and Capital One Cardholder presales, and so opted to

9   purchase resale tickets to The Eras Tour through a non-Ticketmaster resale

10  platform.[6] Compl. ¶ 24. In order to receive and access those tickets, Plaintiff was

11  required to accept an electronic transfer of the tickets through her Ticketmaster

12  account. Tobias Decl. ¶¶ 15–17. Defendants' records indicate that Plaintiff

13  accepted that transfer via Ticketmaster's mobile site on December 9, 2022. Green

14  Decl. ¶¶ 7–8. To do so, Plaintiff had to assent to the current Terms at least twice:

15  when she accepted her tickets in the ticket-transfer email she received, and when she

16  signed in to her account to complete the transfer.

17  *First*, when the tickets to The Eras Tour were transferred to Plaintiff, she

18  received an email notifying her of the transfer. *See* Tobias Decl. ¶ 16 & Ex. 11. In

19  that email, Plaintiff was presented with an "ACCEPT TICKETS" button, which she

20  had to click in order to accept transfer of the tickets. *Id.* Directly below that button,

21  Plaintiff was notified: "By clicking 'ACCEPT TICKETS,' you agree to our Terms

22  of Use and any applicable ticket back terms." *Id.* The words "Terms of Use"

23  appeared in color-contrasting, bright blue text, immediately below the "ACCEPT

24  

---

25  [6] These tickets were initially sold by Ticketmaster during onsale for The Eras
26  Tour. Green Decl. ¶¶ 7–8. Plaintiff alleges that she subsequently purchased them
    from a reseller on a non-Ticketmaster resale platform. Compl. ¶ 24. Ticketmaster
    does not have visibility into off-platform resales or the reasons for a particular ticket
27  transfer, but Ticketmaster's records show that three tickets to The Eras Tour were
    transferred to Plaintiff on December 9, 2022. Green Decl. ¶¶ 7–8. Despite being
28  transferred, Ticketmaster still distributes, issues, and services those tickets, because
    it is the primary ticketing service provider for the event. Tobias Decl. ¶¶ 15–16.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

TICKETS" button, and hyperlinked directly to the full text of the current Terms:



*See id.*  This notice is similar to other notices on Ticketmaster's sites that the Ninth Circuit, this Court, and others have held is sufficient to bind users to the Terms.  *See, e.g.*, *Lee*, 817 F. App'x at 394–95; *Nevarez*, 2017 WL 3492110, at *7–10; *Himber*, 2018 WL 2304770, at *5.

    *Second*, when Plaintiff clicked the "ACCEPT TICKETS" button, she was auto-directed to Ticketmaster's sign-in page, which opened in a new window. Tobias Decl. ¶ 17.  Plaintiff was required to sign in to her Ticketmaster account in order to accept the transferred tickets.  *Id.*  When she did so, she saw the exact same sign-in notice discussed in Section II.C.1, above, which notified her that, "By continuing past this page, you agree to the **Terms of Use** and understand that information will be used as described in our **Privacy Policy**."  As always, the words "Terms of Use" in the sign-in notice appeared in bold, color-contrasting text, immediately above the "Sign in" button, and hyperlinked directly to the full text of the current Terms. *See Oberstein*, 2023 WL 1954688, at *7–9 (finding that this exact notice provides constructive notice, binding users to the Terms and the arbitration agreement therein).[7]

---

[7]    Plaintiff's acceptance of tickets to The Eras Tour was not the first time she accepted a ticket transfer through Ticketmaster's site.  For example, Plaintiff accepted ticket transfers for at least two other events in November 2022.  Green Decl. ¶ 7.  Plaintiff was also required to sign in to her account and accept the Terms when accepting these transfers.  *See* Tobias Decl. ¶¶ 16–17.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

### 3.   *Plaintiff's Other Recent Ticket Purchases*

In addition to using Ticketmaster's sites multiple times to register for and participate in The Eras Tour presales, and to accept the transfer of tickets to The Eras Tour (and other shows), Plaintiff has also used Ticketmaster's sites on numerous occasions to purchase tickets.   For example, on May 23, 2022, Plaintiff used Ticketmaster's mobile site to purchase tickets to Hamilton, scheduled for June 24, 2022 at the Richard Rodgers Theatre.   Green Decl. ¶ 9(c).   And on November 2, 2022, Plaintiff used Ticketmaster's mobile application to purchase tickets to Cirque Du Soleil: Corteo, scheduled for March 5, 2023 at the Climate Pledge Arena.   *Id.* ¶ 9(d); *see also id.* ¶ 9(a)–(b) (identifying additional ticket purchases made by Plaintiff).

In connection with each of these purchases, Plaintiff had to assent to the Terms on multiple occasions—including each time she signed in to her account,[8] and each time she placed an order.   For example, when Plaintiff purchased tickets to Cirque Du Soleil on November 2, 2022, she was required to sign in to her account—at which point she would have seen the exact same sign-in notice discussed above, in Section II.C.1.   Then, to complete the ticket purchase, Plaintiff was required to check a box affirmatively acknowledging: "**I have read and agree to the current Terms of Use**."   The notice appeared in bold font, with the words "**Terms of Use**" in color-contrasting, bright blue text (hyperlinked directly to the full text of the current Terms), immediately above the "Place Order" button:



---

[8]   Users are required to sign in to their accounts in order to purchase tickets. Tobias Decl. ¶ 8.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  *See* Tobias Decl. ¶ 12.  This notice is similar to the one that the Ninth Circuit found
2  constituted constructive notice (thereby binding users to the Terms) in *Oberstein*: it
3  appears in bold, bright blue, color-contrasting text, hyperlinks directly to the Terms,
4  and is immediately above the "Place Order" button.  *Oberstein*, 2023 WL 1954688,
5  at *7–9, *aff'g* 2021 WL 4772885, at *6–7; Tobias Decl. ¶ 14 & Exs. 9–10
6  (screenshots of notice at issue in *Oberstein*).  But in contrast to the notice at issue in
7  *Oberstein*, the purchase page notice in this case also required Plaintiff to check a box
8  affirming her agreement to the current Terms.  In 2022, Plaintiff checked that box
9  on Ticketmaster's sites two separate times.  Each time she did so, Plaintiff again
10  affirmed her agreement to the "**current Terms of Use**."

11  ## III.   LEGAL STANDARD

12      The Federal Arbitration Act ("FAA") governs Plaintiff's claims.  *See* Tobias
13  Decl. Exs. 14–18 (current and prior versions of the Terms, stating that the FAA
14  governs).  Under the FAA, an agreement to arbitrate "shall be valid, irrevocable, and
15  enforceable, save upon such grounds as exist at law or in equity for the revocation
16  of any contract."  9 U.S.C. § 2.  Congress enacted the FAA in order "to replace [a]
17  'widespread judicial hostility'" toward arbitration "with a 'liberal policy favoring
18  arbitration.'"  *In re Grice*, 974 F.3d 950, 955 (9th Cir. 2020) (citation omitted).
19  Courts must "rigorously . . . enforce arbitration agreements according to their
20  terms."  *Id.* (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  By
21  "affording parties discretion in designing arbitration processes," the FAA promotes
22  "efficient, streamlined procedures tailored to the type of dispute."  *AT&T Mobility*
23  *LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

24      Pursuant to the FAA's strong policy favoring arbitration, the district court's
25  role in ruling on a motion to compel arbitration is typically "limited to determining:
26  (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the
27  agreement encompasses the dispute at issue."  *Oberstein*, 2021 WL 4772885, at *2.
28  But where, as here, the parties delegate to the arbitrator the power to decide gateway

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

1   arbitrability issues—such as the scope and enforceability of the arbitration

2   agreement—the district court's inquiry is even more limited. "[I]f a valid agreement

3   exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court

4   may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales,*

5   *Inc.*, 139 S. Ct. 524, 530 (2019). To determine whether there is a valid delegation

6   clause, the court undertakes a limited inquiry into whether the parties "clearly and

7   unmistakably" delegated the power to decide arbitrability to the arbitrator.

8   *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

9   **IV.   ARGUMENT**

10      **A.   Plaintiff Assented to the Terms on Multiple Occasions**

11      There is no question that Plaintiff repeatedly agreed to the current Terms—

12   including the multiple occasions when she signed in to her account, accepted the

13   transfer of tickets into her account, and purchased tickets.

14      The notice that Plaintiff saw at sign-in alone is dispositive here. Each time

15   Plaintiff signed in to her Ticketmaster account in November and December 2022,

16   for example—which she was required to do, in order to register for and participate

17   in the presales, and to accept ticket transfers—Plaintiff was presented with the <u>exact</u>

18   <u>same</u> notice that the Ninth Circuit recently found is conspicuous and binds users to

19   the Terms and the arbitration agreement therein. *See Oberstein*, 2023 WL 1954688,

20   at *7–9, *aff'g* 2021 WL 4772885, at *6–7.[9] As the Ninth Circuit explained, that

21   notice at sign-in "provide[s] reasonably conspicuous notice of the Terms"; as a

22   result, users (like Plaintiff) who sign in to their Ticketmaster accounts

23   "unambiguously manifest[] assent" to the current Terms, including the arbitration

24   agreement. *Id.* The Court's inquiry can and should end there: *Oberstein* is binding

25   authority, and the Court need only find that Plaintiff assented to the Terms at <u>one</u>

26   _____

27   [9]    *See also Hansen*, 2020 WL 7319358, at *1, *5 (finding that the exact same
       notice at sign-in bound users to the Terms); *Ajzenman*, 2020 WL 6031899, at *2, *4
28   (same); *Lee*, 817 F. App'x at 394–95 (same conclusion, on *de novo* review, with
       respect to substantially identical notice at sign-in).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

point in the user flow to conclude that the Terms are enforceable.  *See Lee*, 2019 WL 9096442, at *1 n.1; *Dickey*, 2019 WL 9096443, at *7.

But Plaintiff also assented to the Terms on many, many other occasions.  For example, Plaintiff assented to the Terms, multiple times, when she accepted the transfer of tickets to The Eras Tour into her Ticketmaster account.  There, when she initially clicked to accept the transfer, the notice: (1) was directly adjacent to the "Accept Tickets" button, (2) explicitly stated that, by clicking that button, Plaintiff agreed to the Terms, and (3) displayed "Terms of Use" in color-contrasting, bright blue font that hyperlinked directly to the full text of the Terms.  *See* Tobias Decl. ¶ 16.  Courts have repeatedly found assent where plaintiffs were presented with notices that had these (and similar) features.  *See, e.g.*, *Lee*, 817 F. App'x at 394–95; *Nevarez*, 2017 WL 3492110, at *7–10; *Himber*, 2018 WL 2304770, at *5; *In re Ring LLC Priv. Litig.*, No. 19-cv-10899, 2021 WL 2621197, at *5 (C.D. Cal. June 24, 2021) (collecting cases).

Plaintiff also checked a box affirming that she read and agreed to the current Terms each time she purchased tickets through Ticketmaster's platform in 2022.  *See* Tobias Decl. ¶ 12.  Again, the Ninth Circuit, this Court, and others have repeatedly found that similar notices on Defendants' purchase pages are conspicuous and bind users to the Terms.  *See Oberstein*, 2021 WL 4772885, at *6–7; *Ajzenman*, 2020 WL 6031899, at *2, *4; *Nevarez v. Forty Niners Football Co., LLC*, No. 16-cv-07013, 2017 WL 3492110, at *7–10 (N.D. Cal. Aug. 15, 2017).  The notice on the purchase pages that Plaintiff saw when purchasing tickets in 2022 is, if anything, even more conspicuous than the purchase pages at issue in *Oberstein* and other cases, because it includes a box that users must check, attesting that they "have read and agree to the current Terms," before they can complete their purchase.  *See* Tobias Decl. ¶ 12.  Courts routinely find that checkbox notices—referred to as pure "clickwrap" notices—bind users to the terms at issue.  *See, e.g.*, *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) ("no question" that plaintiff "affirmatively assented to the . . . Terms"

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

where "[h]e checked a box acknowledging as much"); *Oberstein*, 2023 WL 1954688, at *9 (explaining that, to avoid any "second-guessing" about whether a particular notice is sufficiently conspicuous and "ensure that an online agreement passes muster, clickwrap is the safest choice").

As the Ninth Circuit held in *Oberstein*, the notices on "the Ticketmaster and Live Nation websites provide[] reasonably conspicuous notice of the Terms to which [users] unambiguously manifest[] assent," therefore, "the Terms, including the arbitration provision, [are] valid and binding." *Id.*  Plaintiff was presented with those notices many times, including in connection with her attempts to purchase tickets to The Eras Tour, and she unambiguously manifested her assent many times.  She is therefore bound by the Terms, including the arbitration provision.

**B.     The Parties Clearly and Unmistakably Delegated Arbitrability to the Arbitrator**

Once the Court finds that Plaintiff agreed to be bound by the Terms, the Court's inquiry ends.  To the extent Plaintiff intends to challenge whether her claims fall within the scope of the arbitration agreement, that agreement "clearly and unmistakably" provides that those issues must be decided by an arbitrator and not the Court.  *See Henry Schein*, 139 S. Ct. at 529, 531 (holding that where there is "clear and unmistakable evidence" that the "contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract," "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless").

This Court has already determined, on multiple occasions, that the Terms are "clear and unmistakable" in delegating issues of arbitrability to the arbitrator, not the Court.  *Oberstein*, 2021 WL 4772885, at *7; *Dickey*, 2019 WL 9096443, at *8. The Terms specify that:

> The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve <u>all</u> disputes arising out of or relating to the interpretation, applicability,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

enforceability, or formation of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable.[10]

*See* Tobias Decl. Ex. 14 (current Terms) (emphasis added); *see also id.* Exs. 15–18 (prior versions).[11] "Multiple other courts," in addition to this one, "have looked at the exact same language and also confirmed that it satisfies the 'clear and unmistakable' standard." *Oberstein*, 2021 WL 4772885, at *7 (citing *Lee*, 2019 WL 9096442, at *1); *Nevarez*, 2017 WL 3492110, at *11; *Himber*, 2018 WL 2304770, at *5. There is no reason why the Court should "deviate from its previous holding that the delegation clause in the [Defendants'] TOUs meets the requisite 'clear and unmistakable' standard." *Oberstein*, 2021 WL 4772885, at *7 (quoting *Dickey*, 2019 WL 9096443, at *8). Further, as this Court recently explained, because the delegation clause is clear and unmistakable (including in its delegation of arbitrability), questions regarding the scope of the arbitration provision are "contractually delegated to the arbitrator." *See id.* at *8; *see also, e.g., Schwendeman v. Health Carousel, LLC*, No. 18-cv-07641, 2019 WL 6173163, at *3 (N.D. Cal. Nov. 20, 2019) (analyzing arbitration provision with the exact same delegation

---

[10]     In addition, the Terms also specify that the arbitration "will be administered by New Era ADR in accordance with their Virtual Expedited Arbitration Rules and Procedures, as well as any applicable General Rules and Procedures, except as modified by the Terms." Tobias Decl. Ex. 14. The New Era Rules specify that "[a]ny question or matter of arbitrability of a dispute shall be determined solely by the neutral(s) provided by New Era ADR Inc. and not in a court of law or other judicial forum. *The parties agree and acknowledge that they are waiving their right to seek a determination of arbitrability in a court of law or other judicial forum.*" New Era Rule 2(z)(i) (emphasis in original). This is further "clear and unmistakable" evidence that the parties intended the arbitrator to determine the threshold question of arbitrability. *See, e.g., Johnson v. Oracle Am., Inc.*, No. 17-cv-05157, 2017 WL 8793341, at *6–9 (N.D. Cal. Nov. 17, 2017) (enforcing arbitration agreement incorporating arbitration provider's rules, which gave "arbitrator authority to decide arbitrability disputes").

[11]     The delegation clause in the current Terms is identical to prior versions (including the versions at issue in *Oberstein* and *Dickey*), save for one difference; it includes a narrow exception: "[I]n the event of a dispute about which particular version of this Agreement you agreed to, a court will decide that specific question." Tobias Decl. Exs. 14 (current Terms), 15–18 (prior versions). This exception does not apply here, as the Terms were last updated on July 2, 2021, and Plaintiff assented to the Terms as recently as December 9, 2022, as well as on multiple, additional occasions post-July 2021. *See supra* Sections II.C & IV.A.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

1   language and concluding that "the delegation clause . . . delegates to the arbitrator

2   all questions of arbitrability, including . . . whether the Agreement covers a

3   particular controversy"); *Andrews v. Michaels Store, Inc.*, No. 21-cv-02294, 2021

4   WL 4813760, at *5, *7 (C.D. Cal. Sept. 15, 2021) (similar). The Court's analysis

5   can and should stop there.

6   **C.    The Arbitration Agreement Plainly Encompasses the Dispute at
7           Issue**

8           Because the delegation clause clearly and unmistakably delegates questions

9   of arbitrability to the arbitrator, the Court need not—and may not—inquire further.

10  *See Henry Schein*, 139 S. Ct. at 530.  If, however, the Court finds the delegation

11  clause does not meet the clear and unmistakable standard, the Court should still

12  enforce the parties' arbitration agreement because the arbitration agreement plainly

13  encompasses Plaintiff's claims.  "[T]he scope of the claims governed by an

14  arbitration clause depends on the language used in the clause."  *Augustine v. TLC*

15  *Resorts Vacation Club, LLC*, No. 18-cv-01120, 2018 WL 3913923, at *8 (S.D. Cal.

16  Aug. 16, 2018) (citation omitted).  The Supreme Court has held that claims must be

17  arbitrated "unless it may be said with positive assurance that the arbitration clause is

18  not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs.,*

19  *Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted).  In

20  making this determination, courts in the Ninth Circuit interpret provisions that

21  include the phrase "relating to" broadly.  *See, e.g.*, *Cayanan v. Citi Holdings, Inc.*,

22  928 F. Supp. 2d 1182, 1207 (S.D. Cal. 2013) ("The Ninth Circuit explained . . . that

23  the inclusion of the phrase 'relating to' should lead to a broader interpretation.").

24          Plaintiff's claims are unquestionably covered by the arbitration provision,

25  which broadly states:

26              any dispute, claim, or controversy relating in any way to
                the Terms, your use of the site, or products or services
27              sold, distributed, issued, or serviced by or through us …
                will be resolved solely by binding, individual arbitration
28              as set forth in the Terms, rather than in court.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

Tobias Decl. Ex. 14 (emphases added).  Plaintiff's claims not only relate to, but indeed are anchored in, Ticketmaster's website, products, and services in connection with The Eras Tour onsale.  The very first paragraph of Plaintiff's Complaint alleges that her lawsuit derives from Defendants' "handling of the presale, sale, and resale of concert tickets to Taylor Swift's 'The Eras' Tour."  Compl. ¶ 1.  And Plaintiff claims that all of her injuries, and all the putative class members' injuries, "flow, in each instance, from a common nucleus of operative fact, namely, Defendants' anticompetitive and misleading conduct in connection with its ticketing services for Taylor Swift's 'The Eras' Tour."  *Id.* ¶ 51.

    For example, Plaintiff alleges that: "Ticketmaster controlled the registration and access to 'The Eras' Tour tickets," *id.* ¶ 27; "Ticketmaster's website crashed" during the onsale, *id.* ¶ 30; and Ticketmaster charged "supracompetitive" prices for tickets to the Eras Tour, resulting in damages to Plaintiff and putative class members, *id.* ¶ 44.  In making these allegations, Plaintiff concedes that she used Ticketmaster's site and services in connection with The Eras Tour onsale—for example, to register for and participate in the presales, and communicate with Ticketmaster about how those presales would work—and she claims that, while using Ticketmaster's site and services, "she experienced significant technical issues" that then caused her to suffer damages. *Id.* ¶¶ 18–24.

    The Eras Tour resale tickets that Plaintiff ultimately received—and that Plaintiff claims she overpaid for (*id.* ¶ 24)—are also distributed, issued, and serviced by Ticketmaster.  Ticketmaster is the primary ticketing service provider for the event to which Plaintiff purchased tickets; it distributes, issues, and services the tickets (e.g., it distributes tickets to users' accounts, manages the digital ticket and barcodes, handles ticket security, and operates the software used to verify those tickets upon admission to the event, which has not yet occurred).  *See* Tobias Decl. ¶ 15.  Indeed, Plaintiff was informed of that fact when she accepted the transfer of those tickets into her Ticketmaster account.  *See* Tobias Decl. ¶ 16.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

1    There is no question that Plaintiff's claims relate to her "use of the site" and
2    "products or services sold, distributed, issued, or serviced by or through"
3    Defendants. *See* Tobias Decl. Ex. 14. Where, as here, "a valid agreement to arbitrate
4    exists," and that "agreement encompasses the dispute at issue," "the [FAA] requires
5    the court to enforce the arbitration agreement in accordance with its terms." *Chiron*
6    *Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

7    **D.    The Court Should Dismiss This Action**

8    The Court "may either stay the action or dismiss it outright when, as here, the
9    court determines that all of the claims raised in the action are subject to arbitration."
10   *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).
11   Here, as courts have found in many other cases, dismissal is the most efficient path
12   forward. *See, e.g.*, *Peterson v. Lyft*, No. 16-cv-07343, 2018 WL 6047085, at *6
13   (N.D. Cal. Nov. 19, 2018) (granting motion to compel arbitration and dismissing
14   case).

15   **V.    CONCLUSION**

16   The FAA directs courts to "respect and enforce the parties' chosen arbitration
17   procedures" and "rigorously . . . enforce arbitration agreements according to their
18   terms." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). The parties here
19   unquestionably agreed to arbitrate the claims at issue, including threshold questions
20   of arbitrability. Defendants therefore respectfully request that the Court grant
21   Defendants' motion to compel arbitration and dismiss or, in the alternative, stay this
22   action.

23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

1    Dated: February 24, 2023                          Respectfully Submitted,

2                                                      LATHAM & WATKINS LLP

3
                                            By:   _/s/ Timothy L. O'Mara_
4                                                 Timothy L. O'Mara

5                                                 505 Montgomery Street, Suite 2000
                                                  San Francisco, California 94111-6538
6                                                 Telephone: +1.415.391.0600
                                                  Facsimile: +1.415.395.8095
7                                                 tim.o'mara@lw.com

8                                                 *Attorneys for Defendants*
                                                  *Ticketmaster L.L.C. and Live Nation*
9                                                 *Entertainment, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS

## CERTIFICATE OF WORD COMPLIANCE

The undersigned, counsel of record for Defendants Ticketmaster L.L.C. and Live Nation Entertainment, Inc., certifies that this brief contains 5,726 words, which complies with the word limit of Civil Local Rule 11-6.1.

Dated: February 24, 2023

*/s/ Timothy L. O'Mara*

Timothy L. O'Mara

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

MEM. OF P. & A. IN SUPP. OF
MOT. TO COMPEL ARBITRATION
CASE NO. 2:22-CV-09230-GW-GJS