LATHAM & WATKINS LLP
  Timothy L. O'Mara (Bar No. 212731)
    tim.o'mara@lw.com
  Kirsten M. Ferguson (Bar No. 252781)
    kirsten.ferguson@lw.com
  Robin L. Gushman (Bar No. 305048)
    robin.gushman@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendants Ticketmaster L.L.C. and Live Nation Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE STERIOFF, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER, LLC,<br><br>Defendants. | Case No. 2:22-cv-09230-GW-GJS<br><br>**DECLARATION OF KIMBERLY TOBIAS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>The Honorable George H. Wu<br><br>Hearing Date: TBD<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D, 9th Floor |

I, KIMBERLY TOBIAS, declare as follows:

1. I am the Senior Vice President of Litigation for Live Nation Entertainment, Inc. ("Live Nation"), a Defendant in the above-entitled action, and the parent corporation of Defendant Ticketmaster L.L.C. ("Ticketmaster"). I make this Declaration in support of Defendants' Motion to Compel Arbitration. The facts set forth herein are based on my personal knowledge and my review of Ticketmaster and Live Nation's records; if called upon to do so, I can and will competently testify to these facts.

2. I have worked for Live Nation and Ticketmaster for the past seventeen years. Since 2021, I have held the position of Senior Vice President of Litigation. Previously (from 2014 to 2021), I held the position of Vice President, Legal Affairs. My responsibilities in both positions have included, among other things, overseeing the Terms of Use (the "Terms") that apply to Ticketmaster and Live Nation's websites, and the notices of the Terms on Ticketmaster and Live Nation's websites. I am familiar with and knowledgeable about those websites, the applicable Terms, and the various notices of the Terms.

3. Ticketmaster and Live Nation operate a number of ticketing websites, including www.ticketmaster.com, where users can purchase tickets to events. Those websites allow users to purchase primary tickets to events, in the first instance, and/or resale tickets (which are often referred to as "secondary" tickets).

4. As explained below, Defendants' Terms include a mandatory arbitration clause. The full text of the Terms is available on Defendants' websites, and those websites (both the desktop and mobile versions) include notices of the Terms at several distinct points in the user flow, including at account creation, sign-in, purchase, and acceptance of a ticket transfer.

# NOTICES ON DEFENDANTS' WEBSITES

### *Ticketmaster Account Creation Page*

5.  In order to purchase a ticket, accept ticket transfers, or take other actions (like registering for certain presales) on www.ticketmaster.com (either the desktop or mobile version), users are required to create an account. Users can then sign in to that account and use it to purchase tickets, send and receive ticket transfers, register for and participate in certain presales, etc.

6.  To create an account, a user must provide personal information, create a password, and click a "Next" button. Immediately above that "Next" button is the following language: "By continuing past this page, you agree to the **Terms of Use** and understand that information will be used as described in our **Privacy Policy**." The phrase "**Terms of Use**" is in bold, bright blue, color-contrasting text, and hyperlinks directly to the full text of the Terms. Attached as Exhibit 1 is a true and correct screenshot of the current account creation page on Ticketmaster's desktop site, and attached as Exhibit 2 is a true and correct screenshot of the current account creation page on Ticketmaster's mobile site (which provides the same notice as on the desktop site).

7.  While the look and feel of www.ticketmaster.com has changed slightly over time, the account creation page has included notice of the Terms since at least 2003 (for the desktop version) and 2010 (for the mobile version). Attached as Exhibit 3 is a true and correct screenshot (taken in November 2018) of the account creation page on Ticketmaster's desktop site; this page was on Ticketmaster's desktop site in July 2018.

### *Ticketmaster Sign-In Page*

8.  In order to purchase tickets, accept ticket transfers, or register for certain presales on www.ticketmaster.com (either the desktop or mobile version), a user is required to sign in to her Ticketmaster account.

9. For example, in connection with The Eras Tour onsale (which included the "TaylorSwiftTix" presale on November 15, 2022 and the "Capital One Cardholder" presale on November 16, 2022), users were required to sign in to their Ticketmaster accounts <u>before</u> participating in the onsales and attempting to purchase tickets. Specifically, for the TaylorSwiftTix presale, users were first required to pre-register for the presale through Ticketmaster's "Verified Fan" program. To do so, users had to sign in to their Ticketmaster accounts and complete the registration through their accounts. Also, on the day of the presale, users had to be signed in to their accounts before participating in the presale and attempting to purchase tickets. For the Capital One Cardholder presale, users were not required to pre-register; rather, the user needed to use a Capital One card at checkout. Like the TaylorSwiftTix presale, however, on the day of the presale, all users had to be signed in to their Ticketmaster accounts before participating in the presale and attempting to purchase tickets.

10. Even if users were ultimately unsuccessful in purchasing tickets in either the TaylorSwiftTix or Capital One Cardholder presale, users were still required to sign in to their Ticketmaster accounts before attempting to purchase tickets. Signing in was a prerequisite to participating in both presales.

11. The sign-in pages on Ticketmaster's desktop site, mobile site, and mobile application are virtually identical. On all three platforms, immediately above the "Sign in" button is the following language: "By continuing past this page, you agree to the **Terms of Use** and understand that information will be used as described in our **Privacy Policy**." The phrase "**Terms of Use**" is in bold, bright blue, color-contrasting text, and hyperlinks directly to the full text of the Terms. Attached as <u>Exhibit 4</u> and excerpted below is a true and correct screenshot of the current sign-in page on Ticketmaster's desktop site, and attached as <u>Exhibit 5</u> is a true and correct screenshot of the same sign-in page on Ticketmaster's mobile site and mobile application. Users who signed in to their accounts on Ticketmaster's desktop site,

mobile site, and mobile application from at least December 2020 through the date of this declaration would have seen the sign-in page shown below and in Exhibits 4 and 5.

*Ticketmaster Purchase Page*

12.   After a user has signed in to her account, the user is ready to purchase tickets.  At that point, the user must fill out payment and billing information and click the "Place Order" button.  Immediately above the "Place Order" button is a checkbox and notice of the Terms.  The notice requires the user to check a box affirming that "**I have read and agree to the current Terms of Use**," in order to make the purchase.  The notice appears in bold font, with the words "**Terms of Use**" in bright blue, color-contrasting text (hyperlinked directly to the full text of the current Terms), immediately above the "Place Order" button.  Attached as Exhibit 6 and excerpted below is a true and correct screenshot of the current purchase page on Ticketmaster's desktop site, for a Cirque du Soleil: Corteo event to be held at the

Climate Pledge Arena on March 5, 2023. I understand that Plaintiff purchased tickets to this event on November 2, 2022. This is the notice that Plaintiff would have seen on the purchase page when she purchased those tickets on November 2, 2022. Attached as <u>Exhibits 7 and 8</u> are true and correct screenshots of the current purchase pages on Ticketmaster's mobile site and mobile application, respectively, for the same event.



13. While the look and feel of www.ticketmaster.com has changed slightly over time, the payment page has included a notice of the Terms since at least 2006 (for the desktop version) and 2010 (for the mobile version). The checkbox shown in Exhibits 6 through 8 was added to the payment page on both the desktop and mobile platforms in August 2020. Since that time, users have been required to check the box affirming that they have read and agree to the current Terms in order to purchase tickets; if a user chooses to not check the box affirming agreement to the Terms, that user cannot complete her purchase.

14. For comparison, attached as <u>Exhibit 9 and 10</u> are true and correct screenshots of the payment pages on Ticketmaster's desktop and mobile sites, respectively, from June 2020 (i.e., before the checkbox was added); these screenshots were also submitted in connection with *Oberstein v. Live Nation Entertainment, Inc.*, No. 20-cv-3888, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) (Wu, J.), *aff'd*, No. 21-56200, 2023 WL 1954688 (9th Cir. Feb. 13, 2023), to show the notice of the Terms that the *Oberstein* plaintiffs would have seen on the purchase page. The purchase pages on Ticketmaster's desktop and mobile sites in 2018 and

2019, for example, required users to assent to the Terms with a substantially similar notice as the one at issue in *Oberstein*.

### *Ticketmaster Ticket Transfer Acceptance*

15.  Users who purchase primary tickets from Ticketmaster may send the tickets to family and friends—or they may resell those tickets on Ticketmaster's resale platform, or on non-Ticketmaster resale platforms (e.g., StubHub or Seat Geek).  In any event, Ticketmaster remains the primary ticketing service provider for those tickets—and for the event.  As the primary ticketing service provider, Ticketmaster is responsible for (among other things) distributing the tickets to users' accounts, managing the digital ticket and barcodes, handling ticket security, and operating the software used to verify those tickets upon admission to the event.  Accordingly, a person who purchases a resale ticket (or otherwise receives a ticket) to an event ticketed by Ticketmaster must—in order to receive the ticket and attend the event—affirmatively accept an electronic transfer of the ticket from original purchaser's Ticketmaster account to their own Ticketmaster account.  This is called a "ticket transfer."

16.  A ticket transfer is initiated by the holder of the tickets, through their Ticketmaster account.  Once that transfer is initiated, the recipient receives an email notification; that email includes information about the tickets and the event—including the seats for the tickets, and the name, date, and location of the event.  In order to receive those tickets, the recipient must accept transfer of the tickets into her Ticketmaster account.  Specifically, the user is required to click an "ACCEPT TICKETS" button in the notification email.  Directly below the button, the user is notified: "By clicking 'ACCEPT TICKETS', you agree to our Terms of Use and any applicable ticket back terms."  The words "Terms of Use" appear in bright blue, color-contrasting text and hyperlink directly to the full text of the Terms.  Attached as <u>Exhibit 11</u> and excerpted below is a true and correct copy of the ticket transfer

notification email that Plaintiff Michelle Sterioff received on December 9, 2022 when she accepted a transfer of three tickets to The Eras Tour.

**ACCEPT TICKETS**

By clicking "ACCEPT TICKETS", you agree to our Terms of Use and any applicable ticket back terms.

17. When a user clicks the "ACCEPT TICKETS" button, she is auto-directed to Ticketmaster's sign-in page (on either Ticketmaster's desktop site or mobile site, depending on whether the user is using a desktop computer or mobile device), which opens in a new window. At this point, the user is presented with the exact same sign-in notice discussed in paragraphs 8–11, above. The user must sign in to her Ticketmaster account in order to complete the ticket transfer and accept the tickets.

***Other Ticketmaster Pages***

18. Finally, in order to browse for (and ultimately select) tickets for purchase on Ticketmaster's desktop and mobile sites, a user must navigate through various pages on Ticketmaster's website. Many of those pages clearly inform the user that her use of the site is subject to the Terms. For example, the current homepage on both the desktop and mobile sites contains a link across the bottom of the page that reads: "By continuing past this page, you agree to our **Terms of Use**." The phrase "**Terms of Use**" is in bold and hyperlinks to the full text of the Terms. Attached as Exhibit 12 is a true and correct screenshot of the current Ticketmaster desktop site homepage, showing this notice, and attached as Exhibit 13 is a true and correct screenshot of the current Ticketmaster mobile site homepage, showing this notice.

19. While the look and feel of Ticketmaster's desktop and mobile sites have changed slightly over time, various pages have informed users browsing the sites of the Terms since at least 2010.

## CONTENTS OF THE TERMS

20. The Terms, which govern the use of Ticketmaster and Live Nation's websites, include an arbitration agreement; this has been true since June 14, 2011. Attached as <u>Exhibit 14</u> is a true and correct copy of the current Terms from Ticketmaster's website. The current Terms have been in effect since July 2, 2021. The same Terms govern the desktop and mobile versions of Ticketmaster and Live Nation's websites and mobile applications.

21. The Terms have been updated from time to time; however, they have contained an arbitration clause since June 14, 2011.

22. Attached as <u>Exhibits 15, 16, 17, and 18</u> are true and correct copies of four prior versions of the Terms from Ticketmaster's website—specifically, the August 5, 2020 Terms, the June 25, 2019 Terms, the December 7, 2018 Terms, and the March 13, 2017 Terms. Some of these versions were pulled using the Wayback Machine, including in connection with prior cases. I have reviewed them and can attest that they are in fact true and correct copies of the Terms that applied as of the date specified.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 24, 2023.

_____
Kimberly Tobias