1 | LATHAM & WATKINS LLP
  | Timothy L. O'Mara (Bar No. 212731)
2 |   tim.o'mara@lw.com
  | Kirsten M. Ferguson (Bar No. 252781)
3 |   kirsten.ferguson@lw.com
  | Robin L. Gushman (Bar No. 305048)
4 |   robin.gushman@lw.com
  | 505 Montgomery Street, Suite 2000
5 | San Francisco, California 94111-6538
  | Telephone: +1.415.391.0600
6 | Facsimile: +1.415.395.8095

7 | *Attorneys for Defendants Live Nation*
  | *Entertainment, Inc. and Ticketmaster L.L.C.*
8 |
  | [Additional Counsel on Signature Page]
9 |

10 |

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13 | MICHELLE STERIOFF, individually | Case No. 2:22-cv-09230-GW-GJS
14 | and on behalf of all others similarly |
   | situated, |
15 | | **JOINT SUBMISSION REGARDING**
   | Plaintiff, | **ARBITRATION-RELATED**
16 | | **DISCOVERY PURSUANT TO ECF**
   | | **NO. 47**
17 | v. |
   | | The Honorable George H. Wu
18 | LIVE NATION ENTERTAINMENT, |
   | INC., and TICKETMASTER LLC, |
19 | | Conference Date: July 13, 2023
   | Defendants. |
20 | | Conference Time: 8:30 a.m.
21 | | Courtroom: 9D, 9th Floor
22 |
23 |
24 |
25 |
26 |
27 |
28 |

Defendants Live Nation Entertainment, Inc. ("Live Nation") and Ticketmaster L.L.C. ("Ticketmaster") (together, "Defendants") and Plaintiff Michelle Sterioff ("Plaintiff") (together with Defendants, the "Parties") hereby submit this Joint Submission regarding Plaintiff's arbitration-related discovery, pursuant to the Court's May 15, 2023 Order (ECF No. 47).

On January 30, 2023, the Parties filed a Joint Stipulation setting a briefing schedule for Defendants' motion to compel arbitration. ECF No. 24.  As part of this Stipulation, the Parties agreed that Defendants' motion to compel arbitration would be limited to the following three issues: (1) whether Plaintiff assented to Defendants' Terms of Use, (2) if so, when she assented, and (3) whether an arbitration agreement that encompasses this dispute exists.  *Id.* ¶ 4.  The Parties further agreed that Plaintiff could serve written discovery and deposition notices relating to Defendants' motion to compel arbitration.  *Id.* ¶¶ 6(c)–6(d).  Defendants expressly reserved the right to object to any discovery that was served.  *Id.* ¶ 6(c).  An Order granting the Joint Stipulation was entered on January 31, 2023.  ECF No. 25.

On February 24, 2023, Defendants filed their Motion to Compel Arbitration. ECF No. 26.  In support of their Motion, Defendants submitted the Declarations of Kimberly Tobias (ECF No. 27) and Helene Green (ECF No. 28).

On March 16, 2023, the Parties filed a Joint Status Report Regarding Arbitration-Related Discovery.  ECF No. 36.  In that Joint Status Report, Plaintiff represented that her forthcoming arbitration-related discovery requests would "relate to the three issues identified in the Parties' January 30, 2023 Joint Stipulation," and would "be limited."  *Id.* at 2.  During the March 20, 2023 status conference, Plaintiff's counsel stated that the forthcoming "arbitration discovery [would be] relatively simple … [and] narrowly tailored."  Hr'g Tr. 4:25-5:2.

Pursuant to the Joint Stipulation and Order, on March 21, 2023, Plaintiff served (1) forty-four requests for production, twelve requests for admission, and

seven interrogatories on Ticketmaster, and (2) forty-four requests for production, twelve requests for admission, and seven interrogatories on Live Nation.  Plaintiff also served deposition notices for (1) Kimberly Tobias, (2) Helene Green, and (3) Rule 30(b)(6) depositions for Ticketmaster and Live Nation (consisting of nineteen deposition topics each).  Defendants jointly served objections and responses to Plaintiff's written discovery requests on April 20, 2023.  Pursuant to Local Rule 37-1, Defendants concurrently served a pre-motion letter objecting to the deposition notices and requesting to meet and confer.

In an effort to reach a compromise, Defendants agreed to provide Plaintiff with the transcripts of Ms. Tobias's depositions taken in connection with Defendants' motions to compel arbitration in two related cases: *Heckman v. Live Nation Entertainment, Inc., et al.*, Case No. 2:22-cv-0047 (C.D. Cal.), and *Oberstein v. Live Nation Entertainment, Inc., et al.*, Case No. 2:20-cv-03888 (C.D. Cal.).  After reviewing Ms. Tobias's transcripts, Plaintiff attempted to reach a compromise by agreeing to drop her request for the deposition of Helene Green and eliminate six of the nineteen topics for each of the Rule 30(b)(6) depositions.  Plaintiff also offered to defer Ms. Tobias's deposition until completion of the 30(b)(6) depositions. Defendants declined this offer.

The following general discovery remains in dispute:

    A.    Deposition of Kimberly Tobias.

    B.    Rule 30(b)(6) depositions of Ticketmaster and Live Nation relating to the following categories:

            1.    YOUR policies and practices RELATING TO the retention, deletion, backup, and preservation of data from Ticketmaster's customer records database originating both in hard-copy and electronic format, as well as any media containing backups of such data.

2.     The applications, databases, computer systems, programs and/or other storage mediums through which YOU identify, collect, aggregate, maintain, monitor, track, or otherwise hold CONSUMER data and/or information, including but not limited to information RELATING TO acceptance of the TERMS.

3.     The applications, databases, computer systems, programs and/or other storage mediums through which YOU identify, collect, aggregate, maintain, monitor, track, or otherwise hold CONSUMER data and/or information, including but not limited to information RELATING TO use of the "Remember Me" feature on the SIGN-IN PAGE.

4.     The "Remember Me" feature on the SIGN-IN PAGE.

5.     To the extent not already covered in Topics 3 and 4, the applications, databases, computer systems, programs and/or other storage mediums through which YOU identify, collect, aggregate, maintain, monitor, track, or otherwise hold CONSUMER data and/or information, including but not limited to information RELATING TO consumers' interactions with YOUR platforms after they have selected the "Remember Me" feature.

9.     YOUR policies, practices, processes, and research RELATING TO the design and functionality of the "Accept Tickets" Button.

10.    To the extent not already covered in Topic 4, the functionality of the "Remember Me" feature, including but not limited to information RELATING TO how many times or how long it allows a CONSUMER to bypass the SIGN-IN PAGE.

11.     To the extent not already covered in Topics 4 and 10, COMMUNICATIONS between YOU and any PERSON, or any internal COMMUNICATIONS, regarding the "Remember Me" feature on the SIGN-IN PAGE.

15.     To the extent not already covered in Topic 9, COMMUNICATIONS between YOU and any PERSON, or any internal COMMUNICATIONS, regarding the design and functionality of the "Accept Tickets" Button.

16.     YOUR policies, practices, processes, and research RELATING TO access to transferred tickets.

17.     To the extent not already covered in Topic 16, COMMUNICATIONS between YOU and any PERSON, or any internal COMMUNICATIONS, regarding access to transferred tickets.

18.     To the extent not already covered in Topic 16, COMMUNICATIONS between YOU and any PERSON, or any internal COMMUNICATIONS, regarding information RELATING TO acceptance of the TERMS pertaining to any transferred tickets and/or tickets purchased by third parties.

19.     The contractual relationship between YOU and StubHub, Inc.

At the May 11, 2023 status conference, the Court ordered the Parties to present this dispute in a joint submission, and continued the status conference to July 13, 2023.  ECF No. 44.  Accordingly, the Parties jointly file this submission outlining their respective positions regarding the noticed depositions.

# I.     PLAINTIFF'S POSITION

Defendants attempt to portray the arbitration-related issues in this case as virtually identical to those in *Heckman v. Live Nation Entertainment, Inc., et al.,*

Case No. 2:22-cv-0047 (C.D. Cal.) and *Oberstein v. Live Nation Entertainment, Inc., et al.,* Case No. 2:20-cv-03888 (C.D. Cal.).  Although the unconscionability issues in *Heckman* would certainly apply, this case is unique because unlike the plaintiffs in *Heckman* and *Oberstein*, Plaintiff did not purchase her tickets to Taylor Swift's "The Eras" Tour directly through Defendants.  Due to the significant technical issues that occurred on Defendants' platforms during the presales, Plaintiff was forced to purchase her tickets through StubHub.  *Because Plaintiff did not assent to Defendants' Terms of Use at the time of the transaction giving rise to her claims, Defendants' arbitration provision cannot encompass this dispute.*

Defendants argue that the question of "whether an arbitration agreement that encompasses this dispute *exists*" is a question of scope that must be decided by an arbitrator.  *See* Joint Stip. ¶ 4, ECF No. 24 (emphasis added).  Not so.  In fact, the Ninth Circuit recently held that where the plaintiff assented to a company's terms of use, but did not assent *at the time of the transaction giving rise to his claims,* the plaintiff was contesting "the existence, not the scope, of an arbitration agreement that would encompass this dispute." *Johnson v. Walmart Inc.,* 57 F.4th 677, 681 (9th Cir. 2023). Because Plaintiff's purported assent occurred during a transaction that is entirely separate from the purchase giving rise to her claims, it is the role of the judiciary, not the arbitrator, to determine whether Defendants have satisfied their burden of proving, "the existence of an agreement to arbitrate by a preponderance of the evidence." *Id.* (finding that two contracts, which involved the same parties and the same product, are separate and the arbitration agreement in the first did not encompass disputes arising out of the second).

Defendants argue that by merely *signing in* to Defendants' platforms, users consent to an infinite arbitration agreement that extends so far as to encompass claims arising from transactions that occur not just on Defendants' platforms, but also on *other companies' platforms.* This overbroad interpretation of Defendants'

arbitration agreement must be rejected because it would produce "absurd results" for both consumers *and Defendants. In re Jiffy Lube Intern., Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal Mar. 9, 2012) (quoting *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003)).

Indeed, Defendants' argument would produce absurd results for *Defendants* because it would require *both* Defendants and consumers to arbitrate claims that arise from the resale of tickets on other platforms such as StubHub. Consequently, Defendants have conceded that their arbitration agreement is not so absurdly broad. , To wit, Ticketmaster sued bot-using individuals and entities to prevent them from reselling tickets through StubHub and other resale platforms in *Ticketmaster L.L.C. v. Prestige Entertainment, Inc.,* Case No. 2:17-CV-07232-ODW (JCx) (C.D. Cal). *See* Omoto Dec., Ex. 1 at ¶¶ 5, 33, 47. Indeed, the purpose of this lawsuit was not to prevent the bot-using defendants from merely *using* Ticketmaster's website; rather, it was to prevent them from reselling tickets through Ticketmaster's competitors. *See Ticketmaster L.L.C. v. Prestige Entertainment, Inc.*, 306 F. Supp. 3d 1164, 1175-76 (C.D. Cal. Jan. 31, 2018) ("Ticketmaster's Complaint is wholly devoid of any allegations suggesting that Ticketmaster took steps to prevent Defendants from future access…Rather, Ticketmaster's cease-and-desist letter appears to imply that Defendants could continue to use Ticketmaster's website so long as they abide by the TOU."); *see also* Omoto Dec., Ex. 1 at ¶ 33 (the "Code of Conduct" prevents users from using the site "for commercial purposes, such as to conduct sales of tickets, products, or services"). Defendants cannot "have their cake and eat it too" by arguing that their arbitration clause is infinite when it prevents *consumers* from publicly litigating their claims against Defendants, but reasonably tailored when it permits Defendants to publicly litigate any claims they choose to pursue.

As for the issue of assent, Defendants have argued that Plaintiff assented to Defendants' Terms of Use by merely *attempting* to purchase primary tickets through Ticketmaster and accepting the transfer of the tickets she purchased through StubHub. ECF No. 26-1 at 11-12.  As discussed above, Plaintiff will argue in its forthcoming opposition to Defendants' Motion to Compel Arbitration that this argument is inconsistent with Ninth Circuit law and should be rejected as a matter of law.   However, Defendants' argument also raises several factual questions, including:

1.     Can Defendants prove that Plaintiff *encountered* the sign-in page when she signed into her account during the presales?  In other words, was it possible for Plaintiff to bypass the sign-in page by using, for example, Defendants' "Remember Me" feature? *See* Rule 30(b)(6) Categories 3-5, 10, 11.

2.     Can Defendants prove that Plaintiff encountered the sign-in page and the "Accept Tickets" button identified in the Declaration of Kimberly Tobias (ECF No. 27) when she accepted the transfer of the tickets she purchased through StubHub? *See* Rule 30(b)(6) Categories 9, 15-19.

3.     Is Defendants' data relating to Plaintiff's Ticketmaster account activity reliable, particularly in this case where Defendants' platforms repeatedly crashed due to significant technical issues caused, in part, by unprecedented website traffic and the presence of a staggering number of bots? *See* ECF No. 1 at ¶¶ 6, 30-32; Rule 30(b)(6) Categories 1-3, 5.

These key factual issues were addressed in the Declaration of Kimberly Tobias, who purports to have personal knowledge of these issues. ECF No. 27. Additionally, Ms. Tobias verified Defendants' responses to interrogatories, which also address these key issues.  Plaintiff is entitled to test the veracity of Ms. Tobias' Declaration – upon which Defendants' Motion to Compel Arbitration largely relies – and the information she provided in Defendants' interrogatory responses. *See*

*Heckman v. Live Nation Entertainment, Inc., et al.,* No. 2:22-cv-0047, 2022 WL 19376995, at * 3 (C.D. Cal. June 7, 2022); ECF No. 25.

Defendants contend that they "have already explained (repeatedly) in their verified responses that it is not possible for a user to "bypass" or otherwise avoid the sign-in page by using the "Remember Me" feature."  However, Defendants' responses, which were verified by Ms. Tobias, also establish that a user can "remain logged in to an existing session for up to thirty days…" Omoto Decl. Ex. 2 (Response to Interrogatory No. 4).  If a user can "remain logged in" for an extended period of time, they presumably would be able to participate in certain presales, or take any action during the "existing session" without actually logging in.  For instance, if the user has an "existing session" on the Ticketmaster mobile application beginning on November 1, 2022, they may not encounter the sign-in page when using that mobile application until December 1, 2022.  This means they could participate in the November 15 and 16, 2022 Taylor Swift presales, and even purchase tickets, *without signing in*.  This would appear to directly contradicts Ms. Tobias's statement in her Declaration that "[i]n order to purchase tickets, accept ticket transfers, or register for certain presales on www.ticketmaster.com (either the desktop or mobile version), a user is required to sign in to her Ticketmaster account," unless Ms. Tobias is not considering the mobile application, which would leave a gaping hole in her declaration that requires further exploration. ECF No. 27 ¶¶ 8, 10.

Defendants also argue that Plaintiff should not be entitled to question the reliability of Defendants' data relating to Plaintiff's account activity because "there's absolutely nothing to suggest that Defendants' user data is not accurate and reliable," and "the data that Defendants produced <u>confirms</u> Plaintiff's own allegations about her activity on Defendants' websites".  However, even the limited information that Defendants have already produced raises serious questions about the data's reliability because the data is inconsistent with both Plaintiff's allegations about her

activity on Defendants' platforms *and* Ms. Tobias' assertions in her declaration. Plaintiff alleges that she participated in the presales on November 15 and 16 (ECF No. 1 ¶¶ 19-23) and Ms. Tobias declared that "[s]igning in was a prerequisite to participating in both presales" (ECF No. 27 ¶ 10).[1]  Yet, Ms. Tobias verifies in Defendants' interrogatory responses that the data shows *no sign-ins* occurred on the days of the presales.  Omoto Dec., Ex. 2 (Response to Interrogatory No. 2).

Plaintiff and this Court should not be required to accept, without question, the inconsistent information produced by Defendants.   The discovery identified is narrowly tailored to the issues that will be briefed in Plaintiff's opposition to the Motion to Compel Arbitration and should be permitted.

## II.   **DEFENDANTS' POSITION**

Plaintiff claims that she needs Rule 30(b)(6) depositions of Live Nation and Ticketmaster, spanning thirteen topics each—as well as a Rule 30(b)(1) deposition of Live Nation's in-house counsel, Kimberly Tobias—in order to gather information on three "key factual issues": whether "Plaintiff encountered the sign-in page when she signed into her account during [Taylor Swift's The Eras Tour] presales," whether "Plaintiff encountered the sign-in page and the 'Accept Tickets' button … when she accepted the transfer of the tickets she purchased through StubHub," and whether "Defendants' data relating to Plaintiff's Ticketmaster account activity [is] reliable."[2] Plaintiff argues that she needs depositions on these issues to support her contention that, because she "did not assent to Defendants' Terms of Use at the time of the

---

[1]      Similarly, in *Dickey v. Ticketmaster LLC*, Ms. Tobias' declaration supported the Court's apparent belief that in order to attempt to purchase tickets, Plaintiff had to affirmatively sign in. *Dickey,* No. CV 18-9052, 2019 WL 9096443, at *6 (C.D. Cal. Mar. 12, 2019) ("Plaintiff had to sign into her account.  To sing in, she had to input her user credential and click a 'Sign In' button…").

[2]      Plaintiff has not articulated how each of the thirteen Rule 30(b)(6) topics is relevant—or why each topic is needed in light of the discovery that Defendants have already produced.  Instead, Plaintiff has provided these three "key factual issues" as the justification for why all topics in the noticed Rule 30(b)(6) depositions are needed, and for why the deposition of Ms. Tobias is also needed.  Defendants therefore focus on those three issues.

transaction giving rise to her claims, Defendants' arbitration provision cannot encompass this dispute." This argument concerns the <u>scope</u> of the arbitration clause.

Scope, along with assent and delegation, are the only issues currently before the Court. Specifically, pursuant to the Parties' stipulation on Defendants' motion to compel arbitration, the only questions for the Court are whether and when Plaintiff assented to Defendants' Terms (assent), whether the Terms delegate arbitrability to the arbitrator (delegation), and whether an arbitration agreement encompassing the dispute exists (scope). *See* Joint Stip. ¶ 4, ECF No. 24.[3] However, neither scope nor delegation are proper targets of discovery. First, the question of whether the Terms delegate arbitrability to the arbitrator is a question of law for the Court. And this Court has already determined, on multiple occasions, that the Terms are "clear and unmistakable" in delegating issues of arbitrability to the arbitrator. *Oberstein v. Live Nation Entertainment, Inc.*, No. CV 20-3888, 2021 WL 4772885, at *7 (C.D. Cal. Sept. 20, 2021), *aff'd*, 60 F.4th 505 (9th Cir. 2023); *Dickey v. Ticketmaster LLC*, No. CV 18-9052, 2019 WL 9096443, at *8 (C.D. Cal. Mar. 12, 2019). Second, questions regarding the scope of the arbitration agreement—i.e., whether the agreement encompasses a particular dispute—are "contractually delegated to the arbitrator," <u>not</u> the Court. *Oberstein*, 2021 WL 4772885, at *7.[4] Consequently, discovery into scope and delegation is inappropriate. *See, e.g.*, *Tate v. Progressive Fin. Holdings*, LLC, No. 217CV01589, 2017 WL 4804354, at *4 (C.D. Cal. Oct. 24, 2017) (explaining that the FAA allows only "limited pre-arbitration discovery," and rejecting Plaintiff's contention "that he should be entitled to conduct discovery to

---

[3]    The Parties stipulated that the issue of unconscionability is not presently before this Court. *Id.*

[4]    *See also Schwendeman v. Health Carousel, LLC*, No. 18-cv-07641, 2019 WL 6173163, at *3 (N.D. Cal. Nov. 20, 2019) (analyzing arbitration provision with the exact same delegation language as Defendants' Terms and concluding that "the delegation clause … delegates to the arbitrator all questions of arbitrability, including … whether the Agreement covers a particular controversy"); *Andrews v. Michaels Store, Inc.*, No. 21-cv-02294, 2021 WL 4813760, at *5, *7 (C.D. Cal. Sept. 15, 2021) (similar).

determine whether the arbitration clause … encompasses his claims"). Again, Plaintiff's argument for why she allegedly needs the depositions goes to the question of scope—specifically, Plaintiff is looking for testimony to support her argument that the Terms' arbitration agreement does not "encompass" her particular claims in this case.[5] The depositions can (and should) be denied on this basis.

In contrast to delegation and scope, assent is the only question before the Court that's arguably a proper target of discovery at this stage. But to the extent that Plaintiff's "key factual issues" touch on assent, there's no credible argument that additional discovery on assent—let alone depositions—is necessary or appropriate in light of the comprehensive discovery that has already been produced in this case. Defendants have already produced documents and data showing exactly when and how Plaintiff assented to the Terms. In particular, Defendants have provided information on Plaintiff's use of Defendants' websites—including detailed user data showing exactly when (i.e., the specific date and time) she created her account, signed in to her account, registered for Taylor Swift's The Eras Tour presale, purchased tickets, and accepted ticket transfers.[6] Defendants have also provided screenshots showing the exact notices of the Terms that Plaintiff saw when she took each of those actions. *See* Tobias Decl., Exs. 3-8, 11; *see also id.*, Exs. 9-10. This data and information clearly establish "whether and when" Plaintiff assented to the Terms. *See Oberstein*, 60 F.4th at 515–17. For example, Defendants have produced detailed data showing the <u>exact</u> date and time of <u>each</u> occasion on which Plaintiff

---

[5]    Plaintiff devotes almost a quarter of her statement to a convoluted argument about the *Prestige* case, and how that case might inform the scope of arbitral claims here. Again, questions of scope have been delegated to the arbitrator—and do not justify further fact discovery in this case. And, in any event, the claims in *Prestige* fell within a specific exception to the arbitration clause at issue in that case, which is why they were brought in court (not arbitration). That exception has no applicability here—nor does Plaintiff argue that there is some appliable exception to the arbitration agreement in this case.

[6]    The produced data also shows the specific tickets that Plaintiff purchased and received via ticket transfer, and the dates and times when those purchases and transfers occurred.

affirmatively signed in to her account (i.e., entered her username and password, and clicked "Sign In") from March 2022 to the present—including in connection with the presale for Taylor Swift's The Eras Tour, and including in connection with her acceptance of a transfer of tickets to Taylor Swift's The Eras Tour.  Discovery can and should end here.

Nevertheless, Plaintiff claims the Ninth Circuit's recent opinion in *Johnson v. Walmart Inc.*, 57 F.4th 677 (9th Cir. 2023), somehow justifies multiple depositions here—and allows her to bypass the delegation clause—because it purportedly requires proof that she assented to the arbitration agreement during the specific transaction giving rise her claims.  That's not what the Ninth Circuit held in *Johnson*.  Rather, *Johnson* involved two different contracts between the parties that were "separate and not interrelated": one, which pertained to online transactions and included an arbitration agreement; and another, which pertained to an in-store purchase and did <u>not</u> include an arbitration agreement.  *Id.* at 682–83.  The Ninth Circuit found that, since the plaintiff's suit was based solely on the in-store purchase, that was the particular contract at issue; and since that contract didn't include an arbitration agreement, the district court correctly denied the motion to compel arbitration.  *Id.*  That's nothing like this case.  Still, Plaintiff tries to shoehorn this case into *Johnson* by claiming that her claims against Defendants are based solely on her purchase of tickets from another company (i.e., StubHub), so the arbitration agreement cannot "encompass" her claims.  Plaintiff never explains how this legal argument justifies additional fact discovery, or even pertains to the requested depositions.  Moreover, Plaintiff's characterization of her claims is obviously false—and ignores the allegations in her complaint.

Plaintiff's complaint is based on <u>Defendants'</u> alleged actions, not on a purchase from StubHub.  Indeed, the very first paragraph of Plaintiff's complaint (under the heading "Nature of the Case") alleges that "this consumer protection and

antitrust class action lawsuit against Defendants [is] based on Defendants' anticompetitive and misleading conduct <u>with respect to their handling of the presale, sale, and resale of concert tickets to Taylor Swift's 'The Eras' Tour</u>."  Am. Compl. ¶ 1, ECF No. 37 (emphasis added); *see also, e.g.*, *id.* ¶¶ 58–71 (asserting CLRA claim based on Defendants' alleged representations about the Taylor Swift presales); *id.* ¶¶ 72–80 (asserting claim for intentional misrepresentation based on Defendants' alleged representations about the Taylor Swift presales); *id.* ¶¶ 81–95 (asserting claim for common law fraud based on Defendants' alleged representations about the Taylor Swift presales); *id.* ¶¶ 96–101 (asserting claim for fraudulent inducement based on Defendants' alleged representations about the Taylor Swift presales); *id.* ¶¶ 166–173 (asserting a "quasi-contract/restitution/unjust enrichment" claim based on Defendants' alleged representations about the Taylor Swift presales).[7]

The arbitration agreement plainly encompasses these claims, and nothing about *Johnson* requires Defendants to establish additional points of assent to that agreement—one is enough.  *See Lee v. Ticketmaster L.L.C.*, No. 18-CV-05987, 2019 WL 9096442, at *1 n.1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020); *Dickey*, 2019 WL 9096443, at *7.  But, in any event, Defendants <u>have</u> produced detailed data showing that Plaintiff agreed to the arbitration agreement in connection with "their handling of the presale, sale, and resale of concert tickets to Taylor Swift's 'The Eras' Tour."  For example, the sign-in data shows that (among many other sign-ins) Plaintiff signed in to her Ticketmaster account on November 1, 2022, when she registered for the TaylorSwiftTix presale through Defendants' Verified Fan program (Am. Compl. ¶ 18).  That data also shows that, on December 9, 2022, Plaintiff signed in to her Ticketmaster account (twice), when she accepted

---

[7]     Plaintiff's complaint also asserts various antitrust claims against Defendants (e.g., tying, exclusive dealing, boycotts) that do not have any particular connection to the Taylor Swift presales, but rather are general antitrust attacks against Defendants' business.  *See* Am. Compl. ¶¶ 2, 102–145.  Plaintiff ignores these claims altogether, and never attempts to explain how the Terms' arbitration agreement could possibly not "encompass" them.

a transfer of tickets to Taylor Swift's The Eras Tour.[8]  Defendants have produced a screenshot of the sign-in page that Plaintiff saw when she signed in to her account on November 1, 2022 and December 9, 2022.[9]  *See* Tobias Decl., Exs. 4–5.  Notably, this is the same sign-in page that the Ninth Circuit held "provide[s] reasonably conspicuous notice of the Terms," binding users to the current Terms and arbitration agreement.  *Oberstein*, 60 F.4th at 517.[10]  Again, discovery can and should end here.

Nevertheless, Plaintiff argues that she needs to take several depositions in order to (1) understand whether "it [was] possible for Plaintiff to bypass the sign-in page by using, for example, Defendants' 'Remember Me' feature," (2) understand whether Defendants' user data is "reliable," and (3) test the "veracity" of Ms. Tobias's declaration.  None of these arguments justify the requested depositions.

***The "Remember Me" Feature.***  Plaintiff has already served numerous written discovery requests about the "Remember Me" feature.  *See* O'Mara Decl., Ex. A (Pl.'s RFP Nos. 6, 40, 42); *id.*, Ex. B (Pl.'s RFA Nos. 9 & 10); Omoto Decl., Ex. 2 (Pl.'s Interrogs. Nos. 4 & 6).  And Defendants have already explained (repeatedly) in their verified responses that it is not possible for a user to "bypass" or otherwise avoid the sign-in page by using the "Remember Me" feature.  *See* Omoto Decl., Ex. 2 (Defs.' Resps. to Pl.'s Interrogs. Nos. 4 & 6).  The "Remember Me" feature is a username saving feature only; it stores a user's username (e.g., email address) at

---

[8]   As explained in Defendants' verified interrogatory responses, Plaintiff assented to the Terms when she clicked "ACCEPT TICKETS" in the email she received regarding the ticket transfer, and again when she was auto-directed to sign in to her account to accept and view the tickets.  Omoto Decl., Ex. 2 (Defs.' Resp. to Pl.'s Interrog. No. 5).

[9]   Defendants have also produced the email that Plaintiff received in connection with the ticket transfer for Taylor Swift's The Eras Tour tickets; that email depicts the "ACCEPT TICKETS" button that Plaintiff had to click.  *See* Tobias Decl., Ex. 11.

[10]   To be clear, Plaintiff has also assented to the current Terms on numerous other occasions, including when she purchased tickets (and checked a box affirming that she had read and agreed to the current Terms) and accepted ticket transfers (and was presented, again, with a notice of her agreement to the Terms).  *See* Defs.' Mot. to Compel Arb. at 4–10.

the point of sign-in, <u>nothing else</u>. *Id.*  The "Remember Me" feature does not, for example, save or store a user's password. *Id.*  Consequently, using the "Remember Me" feature does not allow a user to avoid typing in her password and clicking "Sign In" in order to sign in and access her account. *Id.*

Defendants have also explained that—unrelated to the "Remember Me" feature—it is possible for a user to remain logged in to an existing session for up to thirty days if she is using the same browser on the same device. *See id.*  In order to initiate a session, a user <u>must</u> sign in. *Id.*  After thirty days, a user is automatically signed out, and she must sign in again to use Ticketmaster's platforms. *Id.*  A user can also be logged out of an existing session prior to the thirty-day mark if she fails multi-factor authentication, if suspected fraudulent activity is detected, or if she signs herself out. *Id.*

In an effort to muddy the waters, Plaintiff conflates the "Remember Me" feature with the fact that it's possible for a user to remain logged in to an existing session for up to thirty days—suggesting that, without a deposition, they do not know if or when Plaintiff actually signed in to her account. <u>But we do know exactly when Plaintiff actually signed in to her account.</u>  As Defendants explained in their verified interrogatory responses:

> To be clear, the concurrently produced sign-in data …
> depicts every affirmative "login" action taken by Plaintiff
> since March 2022; each such action is a separate and
> distinct login to a device that did not have an existing
> session.  In other words, each action depicted in the sign-
> in data is a separate and distinct instance in which Plaintiff
> affirmatively clicked the "Sign In" button to sign in to her
> account.

*Id.*  Since March 2022, Plaintiff has clicked that "Sign In" button to affirmatively sign in to her account on more than <u>twenty</u> separate occasions—including in connection with the Taylor Swift's The Eras Tour.  *See id.*, Ex. 2 (Defs.' Resp. to Pl.'s Interrog. No. 2).

***Reliability of the Data.*** Plaintiff also claims that the depositions are needed to understand whether Defendants' user data is "reliable," suggesting that "technical issues" that arose during Taylor Swift's The Eras Tour presales (e.g., "unprecedented website traffic" and "the presence of a staggering number of bots" attempting to purchase tickets) somehow affected that data. This is wild speculation; there's absolutely nothing to suggest that Defendants' user data is not accurate and reliable. As Defendants explained in their written discovery responses, the user data is housed in private, in-house databases. *See* O'Mara Decl., Ex. A (Defs.' Resp. to Pl.'s RFP No. 28). Those databases (and the systems that house them) are separate and secure, and completely unrelated to any technical issues with Taylor Swift's The Eras Tour presales. Moreover, and in any event, the data that Defendants produced confirms Plaintiff's own allegations about her activity on Defendants' websites. For example, Plaintiff alleges that, "[o]n November 1, 2022, Plaintiff registered for the TaylorSwiftTix Presale." Am. Compl. ¶ 18. In order to register for that presale, a user was required to sign in to his or her account. Mot. to Compel Arb. at 5–7. Defendants' data confirms that, as Plaintiff alleged, she did in fact sign in to her account and register for the TaylorSwiftTix presale on November 1, 2022.[11] That sign in alone would be sufficient to bind Plaintiff to the current Terms. *See Oberstein*, 60 F.4th at 517. Plaintiff's wild speculation, with no basis whatsoever, that the "unprecedented website traffic" and "the presence of a staggering number of bots" attempting to purchase tickets during Taylor Swift's The Eras Tour presales

---

[11] Plaintiff also argues that Defendants' data must not be "reliable" because it does not show an affirmative "login" action on November 15 and 16 (the dates on which the presales occurred). As explained above, however, a user may remain logged into an existing session on the same browser on the same device for up to thirty days; the sign-in data tells us when the user affirmatively signed in and initiated each particular session. Here, for example, the data shows that Plaintiff logged in to her account and initiated new sessions on multiple occasions shortly before the presales took place—e.g., on October 29, November 1, November 2, November 3, and November 6. The fact that the sign-in data does not show an affirmative "login" action on November 15 and 16 simply means that Plaintiff used one of those existing sessions to participate in the presales.

(which took place on November 15 and 16, 2022) somehow renders all user data "unreliable," including the data confirming her sign in on November 1, 2022, two weeks <u>before</u> the presales, makes absolutely no sense—and is not a basis for the requested depositions.

***Tobias Deposition.***  Finally, Plaintiff claims that, in addition to needing Rule 30(b)(6) depositions of Live Nation and Ticketmaster and a Rule 30(b)(1) deposition of Ms. Tobias to explore the purportedly three "key factual issues," she also needs the Rule 30(b)(1) deposition of Ms. Tobias to test the "veracity" of Ms. Tobias's declaration.  Ms. Tobias's declaration consists of screenshots of the relevant notices of the Terms and copies of the relevant Terms.  Plaintiff hasn't raised a single concern about the veracity of those screenshots and copies of the Terms.  Indeed, that information speaks for itself, and Ms. Tobias does not have relevant, non-privileged information beyond what is contained in her declaration and the attached exhibits.

Nevertheless, Plaintiff claims that a deposition is warranted because the data purportedly contradicts information in Ms. Tobias's declaration—in particular, her statement that "[s]igning in was a prerequisite to participating in both presales." Absolutely nothing about the data (or Defendants' interrogatory responses) contradicts that statement—or anything else in Ms. Tobias's declaration.  As Ms. Tobias clearly explained in her declaration, "on the day of [each] presale [for Taylor Swift's The Eras Tour], users had to be signed in to their accounts <u>before</u> participating in the presale and attempting to purchase tickets."  Tobias Decl. ¶ 9 (emphasis added).  The data confirms that Plaintiff affirmatively signed in to her account <u>before</u> participating in the Taylor Swift presales (i.e., on October 29, November 1, November 2, November 3, and November 6).[12]  She then used one of

---

[12]    Again, on each of these occasions, Plaintiff was presented with the exact same sign-in notice that the Ninth Circuit upheld in *Oberstein*.  *See* 60 F.4th at 517; Tobias Decl. Exs. 4–5.

those existing sessions to participate in the presales, as alleged in the complaint.  Am. Compl. ¶ 18.  No further discovery is required for the Court to determine assent—or to understand the veracity of Ms. Tobias's declaration.

Moreover, Ms. Tobias has already been deposed <u>twice</u> in connection with motions to compel arbitration in this Court: in *Oberstein* and *Heckman*, where she submitted similar declarations to the one she submitted here.  Those transcripts have been provided to Plaintiff.  A third deposition of Live Nation's in-house counsel on the same and similar issues is completely unnecessary and clearly unduly burdensome.  *See Oberstein*, 60 F.4th at 518 (finding that Defendants' websites provide constructive notice of the Terms, and holding that where, as here, "uncontested features of a webpage meet the baseline requirements for constructive notice, additional evidence of subjective intent is not required for a court to determine that constructive notice exists").

\*     \*     \*

Plaintiff has failed to explain how or why depositions could possibly supply additional relevant information here.  She has failed to do so with respect to the Rule 30(b)(6) depositions—and she has failed to do so with respect to the Rule 30(b)(1) deposition of Ms. Tobias.  Defendants respectfully request that the Court quash the deposition notices.

| | |
|---|---|
| 1 | Dated: June 29, 2023 |

Respectfully submitted,

LATHAM & WATKINS LLP

By:  /s/ Timothy L. O'Mara
_____

Timothy L. O'Mara (Bar No. 212731)

505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095
Email:  tim.o'mara@lw.com

*Attorneys for Defendants Ticketmaster L.L.C.
and Live Nation Entertainment, Inc.*

Dated: June 29, 2023

FARUQI & FARUQI, LLP

By:  /s/ Lisa T. Omoto
_____
Lisa T. Omoto (SBN 303830)
lomoto@faruqilaw.com
1901 Avenue of the Stars, Suite 1060
Los Angeles, California 90067
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

Walsh P.L.L.C.
Bonner C. Walsh (pro hac vice)
Bonner@walshpllc.com
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206

*Counsel for Plaintiff*

## <u>ATTESTATION</u>

I am the ECF user whose identification and password are being used to file the foregoing Joint Submission Regarding Arbitration-Related Discovery Pursuant to ECF No. 47. Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, Timothy L. O'Mara, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized such filing.


Dated:  June 29, 2023                                    */s/ Timothy L. O'Mara*
                                                                        Timothy L. O'Mara